HESSEE REALTY, INC. v CITY OF ANN ARBOR

1. MANDAMUS—CLEAR LEGAL RIGHT—CLEAR LEGAL DUTY—MINISTE-
   RIAL ACT—DISCRETION.
   To present a proper request for mandamus, a plaintiff must have
   a clear legal right to performance of the specific duty sought to
   be compelled, the defendant must have the clear legal duty to
   perform such act, and the act must be a ministerial act, one
   where the law prescribes and defines the duty to be performed
   with such precision and certainty as to leave nothing to the
   exercise of discretion or judgment.

2. APPEAL AND ERROR—LEGISLATIVE BODIES—ADMINISTRATIVE BODIES
   —EVIDENCE.
   A legislative body is accorded broad power and all reasonable
   exercises of that power are upheld on appeal; a decision of an
   administrative body is upheld where the decision is based upon
   competent, material and substantial evidence on the whole
   record (Const 1963, art 6, § 28).

3. ZONING—MUNICIPAL CORPORATIONS—ZONING DECISIONS—PRESUMP-
   TION OF VALIDITY.
   Municipalities are given great breadth in establishing general
   land use patterns through their powers to zone, and the overall
   zoning map and individual zoning decisions are clothed with a
   presumption of validity and will be upheld if at all reasonable.

4. MUNICIPAL CORPORATIONS—BUILDING PERMITS—APARTMENT UNITS
   —CITY COUNCIL—ORDINANCES—PLANNING COMMISSIONS—DIS-
   CRETION.
   Failure of a city council to approve a plaintiff's site plan for
   apartment units, and to issue a building permit, was an abuse
   of discretion where the applicable ordinance gives the city

REFERENCES FOR POINTS IN HEADNOTES
[1] 52 Am Jur 2d, Mandamus §§ 34, 35, 40, 64, 72, 73.
   Court's control over mandamus as means of avoiding the enforce-
   ment of strict legal right to the detriment of the public. 113 ALR
   209.
[2, 4] 2 Am Jur 2d, Administrative Law §§ 697 et seq., 747.
[3, 4] 58 Am Jur, Zoning §§ 16, 256.

council only narrow administrative powers to review the decision of the planning commission, the planning commission's duty is limited to a determination whether the site plan complies with legal requirements, the decision not to approve the site plan was not supported by competent and material evidence, written reasons for the decision were not given as required by the ordinance, and plaintiff complied with all the requirements. (Ann Arbor Code, Title V, ch 57, § 5:120 *et seq.).*

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 2 March 5, 1975, at Lansing. (Docket No. 19849.) Decided May 28, 1975.

Complaint for mandamus by Hessee Realty, Inc. against the City of Ann Arbor, the Ann Arbor Planning Commission, and others to compel approval of an apartment site plan and issuance of a building permit. John Dwyer intervened as a defendant. Writ denied. Plaintiff appeals. Reversed.

*Conlin, Conlin, McKenney & Meader* and *Bromberg, Robinson, Shapero & Cohn,* for plaintiff.

*Edwin L. Pear,* City Attorney, for defendants.

*Dobson, Griffin & Barense, P. C.,* for John Dwyer.

Before QUINN, P. J., and BASHARA and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiff appeals from a denial of its request for mandamus by the Washtenaw County Circuit Court. Plaintiff had requested the trial court to order defendant's city council to give plaintiff the site plan approval and building permits requisite to developing a parcel of land. The planned development was in conformity with the land use permitted by defendant's zoning ordinance.

Plaintiff purchased the subject land, 41.1 acres

within the City of Ann Arbor, in June, 1972.[1] At
that time and throughout the litigation the land
was zoned "R4B", multi-family residential, and
plaintiff intended to construct apartment units on
the property. In November, 1972, plaintiff, pursu-
ant to the requirements of defendant's subdivision
and land use control ordinance, submitted a site
plan to the Ann Arbor Planning Commission. In
accordance with established procedures, the com-
mission referred the site plan to ten different city
departments for their review. A number of the
departments suggested changes in the plan, and
plaintiff agreed to modify the plan in compliance
with the suggestions. At a January 9, 1973, public
meeting, the planning commission considered
plaintiff's construction plans and, after finding
that plaintiff had made the requested revisions,
approved the site plan and recommended the issu-
ance of a building permit.

The plan, with the planning commission's ap-
proval, was then submitted to the defendant's city
council. The council voted to return the site plan
to the planning commission so that the board of
education might be asked to analyze the potential
impact of the plan on the local schools. The board
refused to give an opinion, claiming that it lacked
jurisdiction to consider the propriety of new build-
ing developments and that plaintiff's plans were
too indefinite to be analyzed as to school impact.
On February 27, 1973, the planning commission
reconsidered plaintiff's plan, which was the same
one it had earlier approved, and this time, rejected
it. The commission gave no reasons for its change
of mind. The city council then held a March 5

[1] Plaintiff was a partner in a partnership known as Casee Develop-
ment Company. It was actually Casee Development Company that
entered into the purchase agreement, but Casee assigned its interest
in the property to plaintiff in December of 1972.

public meeting to reconsider plaintiff's plan. Several Ann Arbor residents spoke against the plan. The council, alluding to possible traffic problems, voted unanimously to reject the plan and to deny the issuance of a building permit.

Plaintiff then instituted the instant action. It asked the circuit court to grant a writ of mandamus, ordering defendant's city council to approve the site plan and issue a building permit. The court refused to grant the requested writ.

To present a proper request for mandamus,

> "plaintiffs must have a clear legal right to performance of the specific duty sought to be compelled; defendants must have the clear legal duty to perform such act; and it must be a ministerial act, one 'where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' 38 CJ, p 598." *Toan v McGinn,* 271 Mich 28, 34; 260 NW 108 (1935). See also *Kortering v Muskegon,* 41 Mich App 153; 199 NW2d 660 (1972).

In denying plaintiff's request, the trial court held that defendant's subdivision and land use control ordinance gives the city council discretion in deciding whether to approve or reject the planning commission's recommendations concerning site plans and building permits. The court stated further that, while "[t]he site plan ordinance does not * * * grant discretion to any city official to improperly withhold approval of a site plan", the city council did not act arbitrarily in denying plaintiff's site plan.

On appeal, plaintiff claims that because plaintiff had complied with all applicable statutory requirements, defendant had only a ministerial function to perform, the granting of a building permit.

Alternatively, plaintiff contends that, if defendant's city council had discretion, its decision to deny the building permit was an abuse of that discretion.

Thus, we must examine defendant's subdivision and land use control ordinance to determine if defendant's city council has discretion in approving site plans and granting building permits and, if it does, to ascertain the breadth of that discretion. Our reading of the ordinance supports the trial court's finding that the city council has discretion in this area. The ordinance mandates the city council to examine the recommendations of the planning commission concerning proposed site plans and be the final arbiter of the acceptability of such plans. The ordinance does not bind the city council to the recommendations of the planning commission but makes the council an independent examiner. It requires that the site plan shall first be submitted to the planning commission which shall consult relevant city agencies, make recommendations and finally approve or reject the plan. Then, the

"Commission's recommendations and all related reports shall be submitted to Council for its consideration; the Council shall, after holding public hearings on said site plan, *take final action* * * * ." Ann Arbor Code, Title V, ch 57, § 5:124(2)(B) (Emphasis supplied.)

The ordinance does not, however, provide a clear indication as to the breadth of defendant's discretion. At one extreme the city council might be given broad "legislative" powers to review the proposed site plan *de novo,* independent of planning commission findings, and be able to reject a plan which complies with all the statutory standards because it deems the plan to be contrary to

its conception of public welfare. At the narrow extreme, the council would be limited, much as an "administrative" appellate board, to the job of reviewing the planning commission's deliberations and recommendations to make sure that they are consistent with applicable standards.

If we hold that city council is a "legislative" body for these purposes, a view supported by defendant and by the trial court, we would have to accord it broad powers and uphold all exercises of that power shown to be "reasonable". *Kropf v Sterling Heights,* 391 Mich 139, 161–162; 215 NW2d 179 (1974). If we, as plaintiff urges, deem the council an administrative body for these purposes, we must determine whether its decision is based upon "competent, material and substantial evidence on the whole record". Const 1963, art 6, § 28; *Keating International. Corp v Orion Township,* 51 Mich App 122; 214 NW2d 551 (1974).[2]

We find that the requirements of the ordinance, read in their statutory context, give defendant's council only narrow "administrative" powers of review. Laws regulating land use must be considered in the context of what is often a conflict between two significant rights: (1) the right of a landowner to utilize his land as he desires and (2) the right of the state, through its political subdivisions, to guarantee that an individual's land use is consistent with the public good. See *e.g.,* Anderson, American Law of Zoning, § 1.11, p 20. Municipalities are given great breadth in establishing gen-

---

[2] *See* concurrence by LEVIN, J. in *Kropf v Sterling Heights,* 391 Mich 139, 164–174; 215 NW2d 179 (1974), and *West v City of Portage,* 392 Mich 458; 221 NW2d 303 (1974), for distinction between "legislative" and "administrative" acts: "When action is based on general grounds, the decision is ordinarily legislative. When it is based on individual grounds, it is ordinarily administrative." *Kropf* at p 166. *See also Palmer v Township of Superior,* 60 Mich App 664; 233 NW2d 14 (1975).

eral land use patterns through their power to zone. The overall zoning map and individual zoning decisions are clothed with a presumption of validity and will be upheld if at all reasonable. *Kropf v Sterling Heights, supra.* To preserve the property owner's right, the municipality's ability to regulate specific uses which the zoning scheme allows, through site plan approval and building permit issuance, must be carefully circumscribed by specific, published standards.

The ordinance, § 5:124(4), states as a requirement for site plan approval:

"Site plans shall not be approved by the Commission unless said site plan contains acceptable provisions for all improvements *required by statute, ordinance or regulation.*"(Emphasis supplied.)

Defendant's ordinance, § 5:120, states as one of its purposes, the desire "to *specify* certain conditions which must be met by [property] owners". (Emphasis supplied.) The planning commission is empowered to "establish standards concerning, but not limited to, streets, drainage, open spaces, landscaping, and utilities". (§ 5:122[3].) The commission's duty is apparently limited to a determination that site plans meet such standards and, through a review by city agencies, comply with the relevant, specific "legal requirements". (§ 5:124[2][A].)

Thus, once the requirements of "statute, ordinance and regulation" have been satisfied, the commission must approve the site plan. We find the same limitations to apply to the city council. Its review is similar to that of an appellate court. The council can only review the site plan to determine if the planning commission has correctly applied the relevant standards and the site plan satisfies those standards.

We find that defendant's review of plaintiff's site plan and building permit request was improper, and defendant's denial represented an abuse of discretion. The record shows that the denial was not supported by competent and material evidence. Neither the planning commission nor the city council gave written reasons for their decisions as the ordinance requires. We can find no legitimate reasons in the record. Some concern was expressed at the council meeting over the impact which plaintiff's development would create on traffic at nearby schools. No specific evidence was presented to support this concern. Indeed, defendant's own department of traffic engineering and transportation had already approved the site plan. At trial, defendant cited an alleged failure by plaintiff to file a traffic impact study and an area plan. As the trial court found, however, these requirements had been expressly waived by defendant.

The best indication of defendant's failure to base its decision on legitimate evidence was the statement by council member Faber shortly before the vote which rejected the plan was taken:

"Yes, I presume there are reasons. I guess the strangest *[sic]* case the attorney would have is to play the tape of this meeting. We are supposed to be acting on sound planning considerations. Quite obviously we are just running around picking at straws and seeing a piece of light there and seeing a piece of dark there. * * * Of course, I'm going to ask that the attorney and planning staff try to come up with something. * * * Finally, I will vote against this and I will move that the attorney and the planning director tell us why we voted no because obviously we don't know yet and see what he can do with that in the court * * * ."

Having found that plaintiff had fully complied

with the ordinance requirements and that defendant's denial of plaintiff's site plan and building permit was an abuse of discretion, we reverse the trial court and order defendant to approve plaintiff's site plan and issue to plaintiff the requested building permit.

Reversed. Costs to plaintiff.