MOORE, J.
 

 [ ,The owners, D’Argent Properties LLC and Stratmore LLC, appeal a judgment affirming an action of the Shreveport City Council, which had denied the owners’ site plan to build, as a “use by right,” a Sonic Drive-In on their lot at the entrance to Woodstone Estates Subdivision. For the reasons expressed, we reverse and render.
 

 Factual Background
 

 The owners, own a tract of land at the northeast corner of Pugh Avenue and Stratmore Drive.
 
 [1]
 
 Pugh Avenue is a frontage road on the east side of Youree Drive, south of LSUS; Stratmore runs perpendicular to Youree. The property is zoned B-3, which expressly permits “use by right” as a restaurant, “including indoor and outdoor dining areas, drive-in, drive-thru, pick-up window, delivery service operations or other exterior service facilities,” to operate from 7 am to midnight. There is a 24-hour Shell/Circle K directly across Stratmore and a nursing home, Heritage Manor Stratmore, immediately to the east of the tract. Further east down Stratmore lie Woodstone Estates and seven gated condominium developments.
 

 With their prospective purchaser, Sonic Corporation, the owners applied to the Metropolitan Planning Commission (“MPC”) for site approval to build a Sonic Drive-In on the tract.
 

 The MPC held a public hearing on February 6, 2008. According to the owners, nearby residents voiced many concerns over the site plan. Representatives of Sonic met with the neighbors and the MPC staff on February 28 to resolve their differences. For instance, the original site plan | gcalled for entrances (“curb cuts”) on both Stratmore and Pugh; Sonic agreed to have no curb cut on Stratmore, only on Pugh. Sonic also agreed to a 10-foot setback, heavy landscaping and a solid-wood 6-foot fence along the tract’s eastern boundary, a small Dumpster with tree shading and more frequent garbage pickups, designated employee parking spaces and a sound system coordinated not to interfere with Heritage Manor’s alarm system.
 

 Even with these changes, the neighbors still opposed the site plan. At the next MPC meeting, on March 5, two neighbors spoke against it, citing increased traffic and a “cruising place” for teenagers. The chairman of the MPC stated that the objections really addressed the B-3 zoning, not this particular site plan. The MPC voted unanimously (8-0) to approve the site plan, with the modifications listed above.
 

 The neighbors appealed to the City Council. The minutes of the council’s April 7 administrative conference show only that the owners’ attorney recapped the MPC’s action.
 

 At the regular council meeting the next day, however, emotions ran high. The owners’ attorney and realtor spoke in favor of the site plan, but four neighbors (including an employee of Heritage Manor) spoke against it. The neighbors also filed three petitions with 275 signatures and
 
 *337
 
 numerous letters. These cited diminished property values, increased traffic, the explosion of “eating establishments” in the area, and a negative impact on the quality of life. The chairman of the MPC defended its decision, saying all the objections were to the use, not to the site plan, and that the approval process was not intended to deny a plan that conformed to zoning. He | ¡¡added that zoning hearings are “not a popularity contest,” and it would be a “misuse of authority” to overturn the MPC.
 

 Council member Bryan Wooley, whose district includes this tract, stated that the lot was properly zoned but the city lacked a master plan by which zoning would be revisited regularly, and he would overturn the MPC “for the betterment of the area.” Council member Joyce Bowman stated that she viewed it as her duty to “be consistent with the majority of the citizens,” and she would overturn the MPC. The council then voted 4-3 to overturn the MPC. Members Michael Long and Ron Webb joined the majority; members Calvin Lester, Monty Walford and Joe Shyne voted to uphold.
 

 Action of the District Court
 

 The owners filed this petition for appeal. The matter was submitted on a large trial notebook and argument. In written reasons for judgment, the district court summarized the procedural background, agreeing with the owners that because they submitted a site plan and sought only permitted B-3 use, no ordinance was required. Even so, the court found that the ultimate “legislative prerogative and decision-making authority” lay with the council, not the MPC, citing
 
 King v. Caddo Parish Comm’n,
 
 97-1873 (La.10/20/98), 719 So.2d 410. It also cited Shreveport City Code § 106-44, “Planning Commission Approvals,” which states the intent to provide “a safe, efficient, attractive and well-ordered community” based on development that is “designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity.” The court acknowledged that [,|certain council members’ comments did not track § 106-44 “and could have been more carefully crafted and articulated,” but they substantially addressed the valid concern that the plan would not be “harmonious and appropriate” for the character of this “mainly residential neighborhood.” The court also discounted the MPC chairman’s view that overruling the MPC was a misuse of authority. The court concluded that the council based its decision on proper issues and affirmed the decision.
 

 This appeal followed.
 

 The Parties’ Positions
 

 By one assignment of error, the owners urge the district court used factors “outside the scope of the discretion permitted by the City Council to determine the reasonableness of the City Council’s actions.” They contend that the appropriate standard of review is for abuse of discretion under La. R.S. 33:4721. They specifically contend that the council abused its discretion by using the site plan process to amend the ordinance or rezone the property. The site plan met or exceeded all requirements under the applicable ordinances, no zoning change or variance was involved, the owners acceded to every neighborhood request, and the MPC approved the site plan; hence, they argue, the council was without discretion to deny it. They concede that
 
 King v. Caddo Parish Comm’n,
 
 supra, gives the ultimate decision to the governing authority, not to a zoning board or planning commission. However, they contend that those cases involved requests to
 
 change
 
 the permitted use of land. They submit that when the
 
 *338
 
 applicant wants only to
 
 comply
 
 with existing zoning, the governing authority should |Rnot have unbridled discretion to deny this permitted use. They conclude that under public pressure, the council “would not have approved any site plan that included a Sonic restaurant,” thus demonstrating an abuse of discretion or arbitrary and capricious conduct on the council’s part.
 

 The city responds that Code § 106^14 calls on the MPC (and, on appeal, the council) to review the development plans for all nonresidential uses “to ensure a safe, efficient, attractive and well-ordered community and best serve the interests of public health, safety and welfare.” Further, § 106-44 authorizes the council to consider whether development is “harmonious and appropriate in appearance with the existing or intended character of the general vicinity” and that it “not be hazardous or disturbing to existing or future nearby uses.” The city submits that the council’s action served these valid objectives, and the district court was not plainly wrong in so finding. The city denies that the council intended a blanket disapproval of any site plan that included a Sonic restaurant. It concludes that the council’s action should be affirmed as it was not a “willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case.”
 
 Prest v. Parish of Caddo,
 
 41,039 (La.App. 2 Cir. 6/2/06), 930 So.2d 1207.
 

 Discussion
 

 Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses to certain localities.
 
 Jenkins v. St. Tammany Parish Police Jury,
 
 98-2627 (La.7/2/99), 736 So.2d 1287. The powers and duties of local governments with regard to zoning are expressed in La. Const. Art. 6, § 17, which provides in part:
 

 |fiSubject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures.
 

 Of special significance to the instant case is the requirement of “uniform procedures established by law.” Zoning regulations must be uniformly applied within each district or zone of the municipality. La. R.S. 33:4722 C;
 
 Jenkins v. St. Tammany Parish Police Jury, supra
 
 (applying R.S. 33:4780.41, a parallel statute for parishes). Such regulations and procedures must be construed in favor of the use proposed by the owner.
 
 Wright v. DeFatta,
 
 244 La. 251, 152 So.2d 10 (1963);
 
 City of West Monroe v. Ouachita Ass’n for Retarded Children,
 
 402 So.2d 259 (La.App. 2 Cir.1981). The actions of a zoning commission will not be disturbed on judicial review unless the court finds that they were plainly and palpably unreasonable, arbitrary, an abuse of discretion, or an unreasonable exercise of police power. La. R.S. 33:4726;
 
 Jenkins v. St. Tammany Parish Police Jury, supra
 
 (applying R.S. 33:4780.40, a parallel statute for parishes).
 

 The Shreveport City Code treats as a “use by right” in a B-3 zone the operation of a “restaurant, including indoor and outdoor dining areas, drive-in, drive-thru, pick-up window, delivery service operations or other exterior service facilities.” Shreveport City Code § 106-678. The code further restricts hours of operation to 7 am to 12 midnight. § 106-684. The parties agree that the owners’ proposed Sonic Drive-In satisfies all aspects of the B-3 code requirements.
 

 
 *339
 
 [ ^Moreover, all nonresidential developments are subject to review and approval by the MPC before a building permit may be issued. § 106-44(a). The MPC is charged with reviewing “the location of uses with unique characteristics which may be necessary or appropriate within a given district but which might otherwise adversely impact future development, existing nearby properties or the community[.]”
 
 Id.
 
 Relevant objectives for the proposed development include, but are not limited to:
 

 (1) That it be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity;
 

 (2) That it not be hazardous or disturbing to existing or future nearby uses, property or persons through activities, processes, materials, equipment or operations that produce excessive traffic, noise, smoke, fumes, glare or odors without adequate means of control[.]
 

 The instant record shows that the MPC worked diligently with the owners and neighbors to remediate all objective complaints about the proposed Sonic Drive-In. This resulted in significant changes to the original site plan, notably moving all curb cuts to Pugh Avenue, the service road; adjusting its intercom system to avoid interference with Heritage Manor; and shielding and shading its trash container. These modifications directly served § 106-44(a)’s guidelines of promoting an appropriate appearance and minimizing traffic and noise. The record does not show that the MPC failed to consider, or improperly applied, any of the guidelines. We cannot affirm the district court’s implicit finding that the MPC’s action was plainly and palpably unreasonable, arbitrary, an abuse of discretion, or Ran unreasonable exercise of police power.
 
 Jenkins v. St. Tammany Parish Police Jury, supra.
 

 The city contends that regardless of the MPC’s compliance with the code, the local governing body has the ultimate authority in matters of zoning and use.
 
 King v. Caddo Parish Comm’n, supra.
 
 Specifically, the city council must apply the same code guidelines in its review of any proposed site plan, and its decision should be affirmed even if the council did not explicitly cite any factors. This proposition finds some support in
 
 King v. Caddo Parish Comm’n, supra:
 

 It is not necessary, for the validity of the ordinance in question, that we should deem the ordinance justified by considerations of public health, safety, comfort or the general welfare. It is sufficient that the municipal council could reasonably have had such considerations in mind. If such considerations could have justified the ordinances, we must assume that they did justify them.
 

 It is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot—not the courts.
 

 Id.,
 
 at 10, 719 So.2d at 416, citing
 
 Palermo Land Co. v. Planning Comm’n,
 
 561 So.2d 482, 491 (La.1990).
 

 The city’s position is unavailing for two reasons. First, we have closely parsed the minutes of the city council and do not find that valid “considerations could have justified” its action. No person who testified at the council meeting showed that the modified site plan failed to address problems of general appearance, traffic and noise. Aside from rank speculation, no
 
 *340
 
 one presented any proof that the Sonic would diminish | ¡property values. Moreover, the recorded comments of two council members utterly refute the claim of proper consideration. Council member Wooley’s remarks showed merely that he disagreed with the tract’s B-3 zoning; while his candor is commendable, it borders on an arbitrary and capricious basis for denying the site plan. Council member Bowman’s statement was an undisguised response to a large, vocal crowd; despite its
 
 ad, populum
 
 appeal, it subverts the rule of uniform application of zoning regulations.
 
 Jenkins v. St. Tammany Parish Police Jury, supra.
 

 Second, we distinguish
 
 King v. Caddo Parish Comm’n, supra, Prest v. Parish of Caddo, supra,
 
 and several other cases cited in brief, on a factual basis. Those cases all involved requests for variances, special exceptions or rezoning of a particular parcel. When an owner seeks to alter the established zoning, the commission or governing body must apply its great discretion and, as a result, the courts will not “take issue with the council.”
 
 King v. Caddo Parish Comm’n, supra.
 
 The instant case, by contrast, is the
 
 res nova
 
 situation in which an owner seeks a use by right, in compliance with the applicable zoning, conforming to every modification imposed, and approved by the commission. The use by right should be presumptively valid and approved.
 
 [2]
 
 For the council to deny such a use, the burden on the city is much higher. On judicial review, the council’s decision to deny a use by right is subject to strict scrutiny, not the normal standard of broad | indiscretion applied to variance cases.
 
 On
 
 this record, the city council did not meet its heightened burden of refuting the owners’ use of right.
 

 We note, nevertheless, that the council has the authority to review MPC decisions, under La. Const. Art. 6, § 17, and R.S. 33:4726. For this reason, with the district court we disapprove of the MPC chairman’s remark that overruling the MPC would be a “misuse of authority.” The council plainly can overrule the MPC, but only after reviewing relevant objectives under § 106-44 and overcoming the presumption that a totally compliant site plan is valid. Such did not happen here.
 

 Finally, we are guided by the principle that zoning ordinances and actions must be construed in favor of the use proposed by the owner.
 
 Wright v. DeFatta, supra; City of West Monroe v. Ouachita Ass’n, supra.
 
 Presumptively, a use of right should be approved. The council’s denial, without advancing any relevant objectives or refuting the MPC’s action, effectively denied the owners’ conforming use. The judgment to the contrary will be reversed.
 

 Conclusion
 

 For the reasons expressed, the judgment affirming the Shreveport City Council’s action is reversed. Judgment is rendered herein approving the owners’ site plan subject to all the modifications imposed by the Metropolitan Planning Commission on March 5, 2008. Costs are not assessed. La. R.S. 13:4521.
 

 REVERSED AND RENDERED.
 

 [1]
 

 . The petition refers to the tract as a portion of Lot 1, while the City Council documents refer to it as Unit 2, of Pugh-Stratmore Commercial Subdivision.
 

 [2]
 

 . Other jurisdictions have reached this conclusion.
 
 Hessee Realty Inc. v. City of Ann Arbor,
 
 61 Mich.App. 319, 232 N.W.2d 695 (1975), held that once the requirements of statute, ordinance and regulation have been satisfied, the planning commission "must approve” the site plan, and "the same limitations apply to the City Council.”
 
 Bateson v. Geisse,
 
 857 F.2d 1300 (9 Cir.1988) held that the denial of a building permit after the owner has satisfied all requirements was "an arbitrary and capricious action” with due process implications.