MOORE, J.
11 The owners, Urban Housing of America Inc. Louisiana, and its partners, Greenwood Villa Partners II and Malmstrom Family Limited Co. (collectively, “Urban Housing”), appeal an action of the Shreveport City Council that denied approval of its subdivision plan to build Phase 3 of Greenwood Villa Subdivision. We reverse and render.

Factual Background

Urban Housing owns an 11.384-acre tract on Danny R. Wimberly Drive, on the north side of Greenwood Road and about 1,000 feet east of Pines Road in Shreveport. Part of the tract is zoned R-A (residence/agriculture), part R-1D (one-family dwellings on large building sites with a minimum lot size of 7,200 sq. ft.), and part R-3 (PUD) (mixed one- and two-family dwellings, townhouses and apartments, the highest population density allowed).
In 2007, Urban Housing filed with the Metropolitan Planning Commission (“MPC”) a subdivision plan to build Phase *228 3 of Greenwood Villa, comprising 40 houses. The plan was similar to two prior phases approved in 1999 and already developed adjacent to this tract, targeting low-income buyers utilizing the federal Low Income Housing Tax Credit. Under this program, buyers who would not qualify for conventional home financing (most earn 60-90% of the area median income) may acquire a new home by actually renting it from the developer with an option to purchase which can be exercised at the end of 15 years. After the 15 years, if the buyer wishes to exercise the option, she must apply to the Federal Home Loan Bank, which will loan her 80% of the house’s value. It is, in essence, |2a “rent to own” plan for low-income homebuyers.
Urban Housing’s principal, Dan Wim-berly, consulted with MPC officials, who offered various suggestions; all these were incorporated into the plan, and the senior planner testified that the plan satisfied all zoning and use ordinances. The MPC approved the plan on November 7, 2007, by a 4-3 vote (two members were not present). The city council took up the matter on December 11, 2007, receiving 74 letters in support of Greenwood Villa but 386 signatures against it, and hearing testimony from 9 persons (including the Wimberlys and their attorney) in support and 5 against; the council voted 4-3 to overturn the MPC and disallow the subdivision plan.
Wimberly testified that shortly after submitting it, he noticed that the plan actually did not fully comply with zoning, as two lots in the R-1D zone were slightly under 7,200 sq. ft. His counsel presented this fact to the MPC staff, which concluded that the matter required more than administrative correction, so Wimberly filed a new, corrected plan. His surveyor, Forrest Rayburn, and the MPC director, Charles Kirkland, testified that the second plan satisfied all zoning ordinances. However, after a meeting on February 6, 2008, in which opponents turned in over 700 signatures, the MPC voted 5-2 to deny the plan.
Urban Housing appealed the decision to the city council, which took up the matter on February 26, 2008. Only Urban Housing’s attorney spoke in favor; several local residents spoke fervently against it. Without giving any further reasons, the council voted 4-2 to uphold the MPC’s denial.[1]
| ¡¡Action in the District Court
Urban Housing filed the instant suit for judicial review of the council’s action. At trial in April 2008, the witnesses testified as outlined above. All agreed that the second subdivision plan met all zoning and use criteria. The MPC director testified that the plan created no adverse impact on any discretionary factor enumerated in the ordinance, Shreveport City Code § 82-41(a), and that R zoning (residential), which governs the entire tract, does not distinguish between owned and rented houses.
Wimberly testified that because buyers are still technically renters for 15 years, Urban Housing could wield tight control over residents and evict anyone for “non-compliant occupancy.” On cross-examination, he admitted knowing that a drug arrest had occurred in Greenwood Villa in July 2006. He also admitted that in his 1998 subdivision plan for Phase 1, he had agreed to erect a 6-ft. screen fence on property lines that abutted other residences, but that he had never done so because Phases 1 and 2 abutted only “the woods as we see it.”
*229 The city argued that Code § 82-41 (a), recently amended by Ord. No. 10 of 2007, gave the MPC and council broad power to evaluate “all aspects that might relate to” the approval, not just those listed, and that the enabling statute, La. R.S. 33:101.1, expressly conferred “legislative discretion” in approving a proposed subdivision. The MPC director, Kirkland, and the senior planner, Stephen Jean, agreed that staff approval was limited to technical compliance and not determinative; the MPC and council may consider a host of other issues. Kirkland also conceded that in this case, |4there were serious issues of compatibility with surrounding residential properties, and vocal opposition.
Joyce Lawrence, a resident of Scenic Drive (on the other side of Pines Road from Greenwood Villa), who had organized the opposition and testified at both council meetings, testified that she was concerned about crime in the area, as a “drug bust” had occurred on Danny Wimberly Drive. She disputed that Urban Housing’s proposed small homes (1,100-1,200 sq. ft.) on relatively small lots (7,200 sq. ft.) were consistent with the average 1,500 sq. ft. homes on half-acre lots in nearby Twilight Meadows, Western Hills Village, and other older subdivisions. She also described personally seeing several “young people” walking through a yard on Rose Street en route to Greenwood Villa; when the owner asked them not to cross his property, they “gave him the finger.” She testified that all her neighbors share her concern about fostering this element so close to their established homes.
After holding the case under advisement for six months, the district court issued a brief opinion recapping the procedural history and noting that the constitutionality of Ord. No. 10 of 2007 was not contested. The court held that under Prest v. Parish of Caddo, 41,039 (La.App. 2 Cir. 6/2/06), 930 So.2d 1207, the city had “virtually boundless discretion” which it did not violate in this case. The court denied Urban Housing’s appeal.
Urban Housing moved for a new trial. At the close of the hearing on this motion, the court remarked that had he been sitting on the council he probably would have voted differently, and he personally did not like the l^Prest case, but he still could find no abuse of discretion. The court denied the motion for new trial, and this appeal followed.

Regulatory Scheme

The general authority for local governments to regulate land use is conferred by La. Const. Art. 6, § 17, which provides in part:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures.
The approval of subdivision plats is regulated by La. R.S. 33:101.1:
Except as otherwise provided in this Subpart, the act of approving or disapproving a subdivision plat is hereby declared a legislative function involving the exercise of legislative discretion by the planning commission, based upon the data presented to it; provided that any subdivision ordinance enacted by the governing authority of a parish or municipality or the acts of the planning commission, or planning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, an *230 excessive use of the power herein granted, or denial of the right of due process. The right of judicial review of a subdivision ordinance shall not be limited by the foregoing[;] however, nothing contained in this Subpart or in any subdivision ordinance adopted by a parish or municipality shall be construed as imposing upon such parish or municipality a duty, special or otherwise, to or for the benefit of any individual person or group of persons.
In accordance with these authorities, the Shreveport Code, as amended by Ord. No. 10 of 2007, provides as follows:
Division 2. Review and AppROVal PROCEDURES
Sec. 82-41. Generally.
(a) The purpose of the approval process described herein |nis to assure the orderly development of property and reduction of blight in existing neighborhoods within the jurisdiction. These requirements do not imply an inherent right to subdivide property or to create building sites except as consistent with the public health, safety and welfare of the entire community. It is intended that this review and any potential approval include an evaluation of all aspects that might relate to this decision, including but not limited to: infrastructure capacity or impact, current growth management policies, traffic congestion, and environmental impacts. Moreover, it is specifically within the authority of the planning commission to require specific improvements, easements or other limitations to development rights that further these public interests as a condition of an approval.

Discussion

Urban Housing contends, by one assignment of error, that the MPC and council abused their discretion by denying a subdivision plan that complied with all applicable ordinances, effectively denying Urban Housing’s use by right of its own property. It shows that zoning regulations must be applied uniformly within each district or zone, Jenkins v. St. Tammany Parish Police Jury, 98-2627 (La.7/2/99), 736 So.2d 1287, and contends that because the city already approved the first two phases of Greenwood Villa, it was facially arbitrary and capricious to deny the third. Urban Housing reiterates that there was no evidence of adverse impact on any factor enumerated in Code § 82-41(a); that it complied with every zoning and use ordinance, requiring no variance or exception; hence, this subdivision was a use by right and presumptively valid. To deny a use by right, the city must meet a “much higher” burden and such a decision is subject to strict scrutiny. D'Argent Properties LLC v. City of Shreveport, 44,-457 (La.App. 2 Cir. 6/24/09), 15 So.3d 334. Urban Housing concludes that the stated concerns (“who the residents of the houses might be, and |7fears that the identity of the residents would lower their property values”) were speculative and insufficient to support the denial of a use by right.
The city responds that the district court properly followed controlling jurisprudence recognizing the council’s legislative discretion, as in King v. Caddo Parish Comm’n, 97-1873 (La.10/20/98), 719 So.2d 410, and that the council properly exercised that discretion in accord with Prest v. Parish of Caddo, supra. It cites the grant of legislative discretion in R.S. 33:101.1 and the broad language of § 82-41(a). The city submits that pursuant to King and Prest, supra, denying a variance, exception or nonconforming use may be based on any consideration whatsoever. The city also stresses Ms. Lawrence’s view that Greenwood Villa’s lots are much smaller than those in “long established” *231 subdivisions off Pines Road, and her description of the foot traffic and rude behavior of Greenwood Villa residents toward homeowners on Rose Road. Finally, it asserts that Urban Housing has never built the 6 — ft. screen fence as agreed in a 1998 stipulation for Phase 1. The city concludes that incompatibility of lot sizes with surrounding residential properties, traffic congestion and circulation, security concerns, and Urban Housing’s failure to comply with the 1998 agreement, all provided a rational basis for denying the plan.
In the recent case of D’Argent Properties LLC v. City of Shreveport, supra, this court considered the analogous situation of a landowner who applied for site plan, completely in compliance with all zoning ordinances, to build a drive-in restaurant. In that case, the MPC had approved the site plan, but on appeal the city council denied it, with members citing “the | sbetterment of the area” and “the majority of the citizens.” On judicial review, the district court upheld the denial of the fully compliant site plan, citing the “broad legislative prerogative and decision-making authority” conferred by King v. Caddo Parish Comm’n and Prest v. Parish of Caddo, supra.
On appeal, however, this court found those authorities inapplicable:
[W]e distinguish King v. Caddo Parish Comm’n, supra, Prest v. Parish of Caddo, supra, and several other cases cited in brief, on a factual basis. Those cases all involved requests for variances, special exceptions or rezoning of a particular parcel. When an owner seeks to alter the established zoning, the commission or governing body must apply its great discretion and, as a result, the courts will not “take issue with the council.” King v. Caddo Parish Comm’n, supra. The instant case, by contrast, is the res nova situation in which an owner seeks a use by right, in compliance with the applicable zoning, conforming to every modification imposed, and approved by the commission. This use by right should be presumptively valid and approved. For the council to deny such a use, the burden on the city is much higher. On judicial review, the council’s decision to deny a use by right is subject to strict scrutiny, not the normal standard of broad discretion applied to variance cases. On this record, the city council did not meet its heightened burden of refuting the owners’ use of right.
Id. at p. 5, 15 So.3d at 840 (footnote omitted).
Although the matter was res nova for Louisiana, this court cited Hessee Realty Inc. v. City of Ann Arbor, 61 Mich.App. 319, 232 N.W.2d 695 (1975), and Bateson v. Geisse, 857 F.2d 1300 (9 Cir.1988), which applied similar reasoning and reached the same conclusion. This court was unable to find any contrary authority.
The instant case is analogous to D Argent. Like the landowner applying for approval of a site plan that complied with all applicable zoning | Requirements, Wim-berly has applied for approval of a subdivision plan that complies with all applicable zoning and use requirements. Despite the sweeping language of R.S. 33:101.1 and Code § 82-41 (a), which would appear to give the city virtually boundless discretion to grant or deny an application, we will apply, as in D’Argent, strict scrutiny to the decision to deny a fully compliant application.[2]
*232 Regulations for land use are subject to uniform procedures established by law. La. Const. Art. 6, § 17; Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982). When applications are granted in similar situations and refused in others, the refusal to grant one may constitute a non-uniform application that is arbitrary and capricious. Jenkins v. St. Tammany Parish Police Jury, supra; Bailey v. Parish of Caddo, 30,822 (La.App. 2 Cir. 8/19/98), 716 So.2d 523, writ denied, 98-2642 (La.12/11/98), 730 So.2d 461. The fact that the MPC and council approved the first two phases of Greenwood Villa and then denied the third, in the absence of a showing of any significant difference in the plans, creates a strong appearance of arbitrary and capricious governmental action.
Some of the reasons offered for the different treatment of Phase 3 find little support in the record. In brief, the city cites traffic congestion and circulation as a legitimate concern. The MPC chairman testified that these issues were raised by neighbors, but he did not confirm that they had any substance, and the city offered no further proof of this point. Obviously, any new development will contribute to traffic; in what way is Greenwood 1 inVilla Phase 3 different? Also, Urban Housing’s failure to build the privacy fence is only a technical violation, as portions of Greenwood Villa do not closely abut other houses.
The issue of disparity of house and lot sizes is factual. At 1,100 to 1,200 sq. ft., Greenwood Villa’s houses are noticeably smaller than the average 1,500 sq. ft. houses in nearby Twilight Meadows and Western Hills Village; the proposed lots of 7,200 sq. ft. (about 1/6 acre) are dramatically smaller than the one-half to one-acre lots along Pines Road. However, the city zoned this property R-1D, obviously anticipating lots as small as 7,200 sq. ft. in close proximity to large, rural lots on Pines Road. Further, the MPC and council previously approved the first two phases of Greenwood Villa, undeterred by the same size disparity.
The issue of security also has some record support, as Ms. Lawrence described a “drug bust” on Danny Wimberly Drive; Wimberly admitted that a drug arrest occurred in July 2006, but stated that all the persons involved had been “evicted.” Ms. Lawrence also described seeing young people walking through yards in nearby subdivisions and interacting unfavorably with the homeowners; Wimberly testified that Urban Housing could evict anyone for noncompliant behavior. There was no evidence of the law enforcement presence in the area.
In short, some of the reasons offered for denying the instant subdivision plan have no support- in the record, and others, while factual, do not satisfy the constitutional requirement under Art. 6, § 17, of “uniform procedures established by law” or meet the heightened burden of denying awfully compliant applicant, recognized in D Argent, supra. We are also guided by the principle that zoning and land use regulations are construed in favor of the owner’s proposed use of his own property. Wright v. DeFatta, 244 La. 251, 152 So.2d 10 (1963); D'Argent Properties LLC v. City of Shreveport, supra; Residents of Shenandoah Estates Subd. v. Green Trails LLC, 2005-1331 (La.App. 1 Cir. 6/9/06), 938 So.2d 1027, writ denied, 2006-2098 (La.12/8/06), 943 So.2d 1095. On this record, we are constrained to find the MPG and city council abused their discretion in denying approval of Urban Housing’s fully compliant subdivision plan.

Conclusion

For the reasons expressed, the judgment affirming the MPC and city council’s *233 action is reversed. Judgment is rendered herein approving Urban Housing’s subdivision plan to build Phase 3 of Greenwood Villa Subdivision. Costs are not assessed. La. R.S. 18:4521.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before BROWN, C.J., and WILLIAMS, STEWART, CARAWAY and MOORE, JJ.
Rehearing denied.
BROWN, C.J., would grant rehearing.

. Members Wooley, Webb, Shyne and Bowman voted to uphold; Lester and Long voted to reverse; Walford is noted in the minutes as “out of the chamber.”

. Curiously, the city did not address (or even cite) D'Argent in brief, even though Urban Housing cited and quoted from it profusely.