STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-183


GLOMAX, LLC

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT AND
LAFEYETTE CITY PLANNING COMMISSION



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20231087
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

**LEDRICKA J. THIERRY**
**JUDGE**

**********


Court composed of Gary J. Ortego, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.


**REVERSED AND RENDERED.**

**Matthew S. Foster**
**Perry R. Staub, Jr.**
**Taggart Morton, L.L.C.**
**1100 Poydras Street, Suite 2100**
**New Orleans, LA 70163-2100**
**(504) 599-8500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Glomax, LLC**

**Daniel J. Gauthier**
**Becker & Hebert, LLC**
**201 Rue Beaurgard**
**Lafayette, LA 70508**
**(337) 233-1987**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Lafayette City-Parish Consolidated Government**

**THIERRY, Judge.**

**FACTS AND PROCEDURAL HISTORY**

In September of 2022, Plaintiff-Appellee, Glomax, LLC, purchased property located at 1927 West University Avenue in Lafayette. Its intention was to develop the property into a convenience store with gas pumps. Prior to its purchase the property had been a bank, even though it consisted of multiple plats (16) of land. Glomax requested that the Lafayette Parish City Planning Commission approve a replat of the property to recognize it as a single tract. It was also established that once the multiple plats of the purchased property were combined, the newly created single lot would have frontage on three public streets, which is prohibited by Louisiana Development Code (LDC) Section 89-3(c)(10). To that end, in its replatting application, Glomax also sought a waiver of Lafayette's prohibition of double fronted lots so as to provide access on more than one street. Glomax worked on the project with the Commission for months and obtained a zoning verification letter.

On December 19, 2022, the Commission issued a "Staff Report." The report noted Glomax made two requests: (1) "Preliminary plat approval for the subdivision of 1.14 acres of property into 1 lot for commercial use," and (2) a "Requested Waiver" of the "Prohibition of Double Fronted Lots." Approval was recommended, subject to certain conditions and plat revisions.

On December 19, 2022, the Lafayette City Planning Commission held a public meeting to consider preliminary plat approval as well as the waiver of the double-fronted lot prohibition. Andre Montagnet, who was the engineer retained by Glomax to work on the development, testified that, although a waiver of the prohibition against double fronted lots was desired, Glomax likely would proceed with the development even without said waiver. Following Mr. Montagnet's

testimony, public comment was allowed. Numerous neighbors spoke out against the development, believing it would lead to loud music, increased crime, increased traffic and other negative effects. Chairman Mark Pritchard reminded the audience that "the purpose of this commission is the re-platting of this property only. The allowed uses of the property are already assigned by the zoning classification." The Commission eventually voted 3-1 to deny the request for preliminary plat approval. The minutes of the meeting reflect the denial was based on "the misuse of the property, the negative impact to the neighboring community and the University Corridor and the concerns of the residents." Similar reasons were cited in the denial letter sent to Mr. Montagnet.

On December 27, 2022, Glomax appealed the Commission's denial to the Lafayette City Council, arguing the "preliminary plat application . . . complies with all requirements of the Lafayette Development Code." A public hearing before the council occurred on February 1, 2023. In its brief, Glomax points to the following testimony between Mary Sliman, Lafayette's Director of Development and Planning, and her questioning from Councilman Andy Naquin:

> Q: So the owner of this property had – has every right to develop it within the parameters of the CM zone CM-1 zoning restrictions, correct?
>
> A: Correct.
>
> Q: And he's bought this, and his whole request today is just to make these 17 lots one lot as it should have been done years and years ago. Would that be a correct assessment?
>
> A: That is what is before you and the planning commission. That is what was before the planning commission.

There was also testimony from a Glomax employee, Rehman Altaf, that Glomax purchased the property because it was assured that replatting was simply a "procedural thing" and also because zoning was not an issue because that area

2

allowed for convenience stores with gas pumps. Again, there were numerous area residents who spoke against the Glomax development plan. The Council's Agenda also noted that 120 citizens called in or emailed opposition to the development.

Again, Glomax points to the testimony of Councilman Naquin, who stated:

What's so tough about this though is we're here to decide one thing, the platting, replatting of the plot, that's it. The use of the land, the use of the intent of what the owner has for it is not even on the table right now. We just have to replat. That's the whole point why we are here is to replat this land.

Despite that statement, Councilman Naquin stated he would vote against replatting "because we have 120 people sitting here saying 'No' we don't want a gas station." Councilman Lewis also stated his "concern is that, um, we received a lot of calls, a lot of emails asking us to vote no, to help you guys out." Glomax notes in its brief that as the council was preparing to vote, Council Chairman Glenn Lazard engaged in the following colloquy with Assistant City-Parish Attorney Paul Escott regarding what exactly was being voted upon:

Mr. Escott: Now, Mr. Chair, I need to make sure we're clear on this okay because you have a couple of components involved in the motion to grant the appeal. You need to be specific if that motion includes whether or not you are approving the request for a waiver of the double frontage. And if you're not, if the granting of the appeal that would result in the granting of the preliminary plat is going to be subject to all the conditions of the previous staff report of December 19th 2022 including the plat revisions and other comments and suggestions. So, I want us to be really careful on this –

Chair Lazard: Yes, we do.

Mr. Escott: Uh, now the alternative motion, and its totally up to how the council wants to deal with this, if the council is inclined to entertain a motion to deny the appeal and uphold the planning commission's decision you do not need to address the waiver request or any of the other conditions. So, totally up to you.

Chair Lazard: Yeah, yeah, we'll take the latter Paul. We'll take the latter.

The Council voted 5-0 to deny Glomax's appeal of the Commission's replatting decision. It appears the Council did not specifically address the waiver of the double fronted lot prohibition, but simply affirmed the Commission's decision to deny the preliminary plat request, which did contain the waiver request.

On March 1, 2023, Glomax filed suit in the Fifteenth Judicial District Court appealing the City Council's decision. Both sides submitted briefs on the issues presented. Glomax also moved to supplement the record with the original Preliminary Plat Application, communications between the parties concerning the proposed development, the zoning verification letter, and a copy of a "Change.org Petition" that was against the development. The district court granted the motion to supplement, with the exception of the "Change.org Petition." LCG sought writs over that judgment, which was denied by this court.

A hearing was held at the district court on December 4, 2023. At the beginning of the hearing, the trial court addressed what it believed the City Council actually voted on, stating:

> And this is the issue that I kind of want to be addressed, because Mr. Gauthier (counsel for the City), I see you're taking the position now that they denied the waiver, is what they did. And so, what is your position in regard to that? Because, what I – and I actually wrote it down. What I heard was from the city council was that Mr. Escott told them that they don't need to address the waiver or other conditions if they vote. Because at first, Mr. Lazard said, well, how are we going to vote on this, and Mr. Escott said, well, it depends on the motion, there are components involved in it. We need to be specific. And then Mr. Escott said, we don't need to address the waiver or other conditions if you vote to uphold the commission decision. That's what was said on the record. Okay.

Counsel for the City acknowledged "none of them expressly said I'm denying this development because of the – because the waiver is unacceptable." However, he also posited before the trial court that the issues that were specifically listed, traffic and environmental, "go to whether a waiver was appropriate."

4

It was acknowledged during the hearing by LCG's attorney that there was no question that the property was zoned "commercial mixed", which allows for convenience stores with gas pumps. LCG maintained strenuously that zoning was not the issue, but rather the fact that the plat application contained the waiver for multiple entrances to the proposed convenience store. The following colloquy occurred during the hearing:

> Mr. Gauthier: What [Glomax] did do was request a zoning verification letter from the government that said my use is commercial mixed. Therefore, my proposed use – a convenience store with gas sales is permitted by right.

> The Court: And you actually said that in a letter?

> Mr. Gauthier: Absolutely.

> The Court: The City said that in a letter that a gas station convenience store was permitted?

> Mr. Gauthier: Yes, Your Honor. And to this day it is. So – but that's, in our opinion, not the issue today. We're not talking about whether the council should have allowed a convenience store with gas sales on that property or whether the use – the proposed use should be allowed or not in a more general sense. What we're saying is the way that they're wanting to do their development was not approved. The multiple entrances with their particular site plan that they submitted with their zoning application. I'm a real estate lawyer and land use lawyer.
> . . .

> The Court: . . . . And so what – what reason would you have in this case, other than arbitrary and capricious to say, no, you can stay in that existing building, but if you tear it down, you can't build another one? What would – what about that would not be arbitrary and capricious?

> Mr. Gauthier: The mere fact that what they're requesting does not comply with our development rules, Your Honor. That is the sole –

> The Court: Okay. And the only reason it doesn't comply is because they're asking for the extra driveway.

> Mr. Gauthier: That's correct.

Although the trial court acknowledged the discretion the Commission had to deny Glomax's waiver request, the trial court nevertheless concluded the City

5

Council acted arbitrarily and capriciously in denying Glomax's application for preliminary plat approval. The trial court reached this conclusion, finding that the City Council "should have voted on the request to replat and then they should have voted on the request to the waiver." The trial court issued a judgment (1) reversing the Council's decision to deny the appeal of the Commission replat denial; and (2) remanding the waiver appeal to the Council to make a decision. The judgment stated in pertinent part:

> After considering the Record and Supplemental Record in this case, the pleadings and the arguments of Counsel, the Court finds that the Lafayette City Council's denial of Glomax's Preliminary Plat Application was arbitrary and capricious. The court further finds that the Preliminary Plat Application contained a request for a waiver of Lafayette's prohibition on double-fronted lots and that the Lafayette City Council did not expressly deny or grant this waiver request.
>
> WHEREFORE, the Court renders the following Judgment **REVERSING** the decision of the Lafayette City Council denying the Preliminary Plat Application, and **REMANDING** Glomax's request for a waiver of the double-fronted lot prohibition to the Lafayette City Council . . . .

LCG then timely perfected this appeal, asserting the following two assignments of error:

1. The District Court erred in finding that the Lafayette City Council acted arbitrarily and capriciously in denying Glomax's application for preliminary plat approval for the Glomax Development, which contained a requested waiver of an applicable Lafayette Development Code requirement.

2. The District Court committed reversible error in ordering that the record appealed from be supplemented with documents and evidence outside of what was heard or considered by the Lafayette City Council and, thereafter, considering the supplemented record in its Judicial Review analysis of whether the Lafayette City Council acted in an arbitrary and capricious manner.

ANALYSIS

*Applicable Statutory Law and Standard of Review.*

Louisiana Constitution Article 6, Section 17 establishes the authority of local government to regulate land use, providing in part:

> Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures.

Louisiana Revised Statutes 33:101.1 sets forth that "the act of approving or disapproving a subdivision plat is hereby declared a legislative function involving the exercise of legislative discretion by the planning commission based upon data presented to it."

The Lafayette Development Code (LDC) provides additional review processes for consideration of plat applications at the local level. Louisiana Development Code Section 89-55(b)(1) provides, in pertinent part:

> . . . The requirements for approval set forth in this Division do not imply an inherent right to subdivide property or to create building sites except as consistent with the public health, safety and welfare of the entire community. It is intended that the review processes of this Division and any decision to approve a subdivision plat shall include an evaluation of all aspects that might relate to this decision, including but not limited to: infrastructure capacity of impact, current growth management policies, traffic congestion, and environmental impacts.

With regard to preliminary plat applications, LDC Section 89-57(f)(1) provides:

1. The appropriate planning and zoning commission will approve the preliminary plat if –

   a. The application applies with all applicable requirements of this chapter, and

   b. The plat is consistent with the comprehensive plan.

In reviewing a land use decision, the issue is whether the governing body's decision is arbitrary and capricious. *Palermo Land Co., Inc. v. Planning Comm'n of*

*Calcasieu Par.*, 561 So.2d 482 (La.1990). Glomax maintains in its brief that the fact it sought to use the property in accord with its already existing zoning classification, entitles it to a heightened standard, that of strict scrutiny. It cites to *D'Argent Properties, LLC v. City of Shreveport*, 44,457, p. 9-10 (La.App. 2 Cir. 6/24/09), 15 So.3d 334, 340, where the court noted, "On judicial review, the council's decision to deny a use by right is subject to strict scrutiny, not the normal standard of broad discretion applied to variance cases." LCG acknowledges the application of strict scrutiny by courts on judicial review in cases where the proposed development complies with all regulations. However, it notes this is simply not such a case, as the plat application submitted by Glomax contained a waiver request of a developmental standard of the LDC, the double-fronted lot prohibition. Thus, as Glomax itself noted in its brief to the district court, in a situation where the "property owner seeks a special use variance or some other exemption from the local land use rules, deference to the legislative function of the local authority should be given and judicial review should be based on the arbitrary and capricious standard."

In *Palermo*, the Louisiana Supreme Court stated that all legislative acts are presumed to be valid and the burden rests on the person challenging the act to overcome the presumption. That burden, the court stated, is extraordinary and the courts will not substitute their judgment for that of the legislative authority. *Id*. "To determine if the governing authority's decision regarding a resubdivision request is valid, the trial court must ask whether the decision bears so little relationship to public safety, health, or general welfare as to render it arbitrary and capricious." *Willow, Inc. v. Jefferson Parish Council*, 05-754, p. 7 (La. App. 5 Cir. 4/25/06), 928 So.2d 756, 760, *writ denied*, 06-1596 (La. 9/29/06), 937 So.2d 869.

"Generally, 'capriciously' has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a

conclusion contrary to substantiated competent evidence." *Herman v. City of New Orleans*, 14-891, p. 6 (La. App. 4 Cir. 1/21/15), 158 So.3d 911, 915-16. "The terms 'arbitrary and capricious' mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case." *Toups v. City of Shreveport*, 10-1559, p. 3 (La. 3/15/11), 60 So.3d 1215, 1217.

***Arguments of LCG.***

LCG argues the City Council's decision to uphold the Commission's denial of Glomax's application for preliminary plat approval is a legislative function and the exercise of the Council's legislative discretion should not have been disturbed by the District Court. LCG maintains that Glomax's plat application did not comply with all platting requirements of the LDC, as it contained a waiver of an otherwise applicable development condition (the double fronted lot prohibition contained in the Lafayette Development Code at Section 89-38(c)(10)). Thus, it was error for the district court to conclude the Council was arbitrary and capricious in upholding the denial of Glomax's plat application.

Additionally, LCG argues the District Court's Judicial Review of the Council's decision should have been confined to the record established before the Council. When the District Court ordered that the record appealed from be supplemented with documents and evidence outside of what was actually heard or considered by the Council when the Council made its legislative decision, and when the district court reviewed and considered the supplemented record as part of its review of the Council's decision, it committed reversible error.

***Arguments of Glomax.***

Glomax argues the district court correctly decided that the denial of it's preliminary plat application, and the Council's denial of Glomax's subsequent appeal, were arbitrary and capricious. Glomax maintains its plat application was

compliant with LDC rules. Apart from the waiver request, LCG cannot identify any issue that validly prevents replatting. Rather than any violations of the LDC which would have prevented replatting, the Commission and then the Council focused only on the concerns of the residential neighbors, which are irrelevant to a boundary determination. These concerns would only have been relevant if Glomax sought a zoning change. This was also evident in the Council's decision as its own members voiced only concerns with neighborhood opposition and use concerns, which, again, are nor germane to the issue of replatting.

Glomax maintains the Council impermissibly denied a valid preliminary plat approval due to intense community opposition to its intended use from neighbors that attended the appeal hearing before the Council. Glomax argues this action was particularly egregious as the denial of the plat application was done solely to prevent Glomax from developing the property for a use that was specifically permitted by right.

*Discussion.*

Initially, we note that Glomax states in its brief that the preliminary plat application it submitted to LCG "complies with all requirements of the Lafayette Development Code." However, there simply is no dispute that the preliminary plat application submitted by Glomax contained a waiver request of the LDC's prohibition against double fronted lots. Glomax, in its brief, acknowledges "there is no 'inherent right' to replatting under LDC Section 89-55(b)." It then goes on to state that "no basis under LDC Section 89-57(f) has ever been identified by LCG that justified denying Glomax's application (other than the waiver request)." The problem with Glomax's argument is that the preliminary plat application submitted by Glomax clearly contained said waiver request. Thus, it did not comply with "all

10

applicable requirements" of the LDC, and LDC Section 89-57(f) provides a valid basis for the governing body to deny the plat application.

Recently, this court in *B & A Holdings, LLC v. City of Natchitoches*, 23-620, p. 7 (La.App. 3 Cir. 3/6/24), 382 So.3d 471, 475, noted the "courts have found that legitimate public concerns can provide a reasonable basis for a municipal council's denial of right-of-use applications." This court cited to *Willow, Inc. v. The Jefferson Parish Council, 05*-754 (La.App. 5 Cir. 4/25/06), 928 So.2d 756, *writ denied*, 06-1596 (La. 9/26/06), 928 So.2d 756, *writ denied,* 06-1596 (La. 9/29/06), 937 So.2d 869, wherein that court found that overlapping utility and drainage servitudes that remained on the property raised "legitimate safety concerns[,]" and the council's subsequent decision to deny the proposal was not arbitrary and capricious.

Similarly here, the fact that the Planning Commission and the City Council may have reached its conclusion to deny the plat application based on the vehement opposition presented by the interested public does not make the City Council's action arbitrary and capricious. Particularly, as one clear aspect of the opposition to the project was based on traffic concerns of nearby residents, which clearly would have been exacerbated by the waiver of the double fronted lot prohibition. Much as in the cases above, this "legitimate public concern" provides a reasonable basis for the City Council's upholding of the Planning Commission's denial of Glomax's plat application.

Glomax also argues to this court that LCG should consider requests for waivers separately from the application for plat approval. However, LDC Section 69-67(d)(1) specifically provides that the "approving agency will process the [waiver] as part of the subdivision application." We have found nothing that requires the governing authority, when considering an application for preliminary plat approval, to hold a separate vote on each waiver request that is part of the

11

application. LCG also notes that the LDC expressly allows an applicant to make and withdraw any requests for waivers or variances, "to address any issues raised by the appropriate Planning and Zoning Commission." LDC Section 89-57(e)(4). We find no authority exists for the trial court's conclusion that the City Council "should have voted on the request to replat and then they should have voted on the request [for] the waiver."

Despite its assertions to the contrary, Glomax's preliminary plat application contained a request for a waiver of the LDC's prohibition against double fronted lots. Thus, it did not comply with all applicable requirements of the LDC and, under Section 89-57(f)(1)(a), approval of the plat application was not simply a "mere formality" as suggested by Glomax. The City Council's exercise of its legislative function in denying the preliminary plat application was not arbitrary and capricious and the trial court erred in holding otherwise.

LCG's second assignment of error asserts the district court committed reversible error in ordering that the record appealed from be supplemented with documents and evidence outside of what was heard or considered by the Lafayette City Council. We recognize that a review of the City Council's decision should be based solely on the information that was considered by that legislative body. To the degree the review by the district court of the City Council's decision included evidence that was not before the City Council, we agree such a consideration is inappropriate. However, as we have concluded the trial court erred in finding the City Council was arbitrary and capricious in denying the appeal from the Planning Commission's denial of Glomax's preliminary plat application, we pretermit any further discussion of this assignment of error.

**DECREE**

For the foregoing reasons, we hereby reverse the district court's judgment reversing the decision of the Lafayette City Council denying Glomax's Preliminary Plat Application, and remanding the request for a waiver of the double-fronted lot prohibition to the Lafayette City Council. We hereby reinstate the Lafayette City Council's decision denying Glomax's appeal from the Lafayette Parish City Planning Commission's denial of preliminary plat approval. All costs of this appeal are assessed against Plaintiff-Appellee, Glomax, LLC.

**REVERSED AND RENDERED.**