PARRO, J.
|2The plaintiffs, Robert Boudreaux, Jessica Boudreaux, and Tradewinds Offshore Services, Inc. d/b/a RB Enterprises (Tradewinds), appeal the judgment of the trial court, which dismissed all claims against the Terrebonne Parish Consolidated Government (TPCG), with prejudice.[1] For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Robert and Jessica Boudreaux are married and live at 4673 Bayouside Drive in Chauvin, Louisiana, which is also the location of Tradewinds, the family-owned business at issue in this matter. The Bou-dreauxs purchased the initial tract of land in 1977, and by around 1995, they owned approximately eighty-five to ninety acres of land on Bayouside Drive.[2]
In 1990 or 1991, the Boudreauxs and Tradewinds engaged in what has been described as “dump truck work,” which was associated with the construction business. Tradewinds hauled and sold river sand and limestone, which it would also stockpile at the Bayouside Drive property for later sale. In addition, a portion of the Bayou-side Drive property was set aside so that it could be excavated for dirt, after which the dirt would be hauled and sold as part of the business. In order for Tradewinds to conduct this work, it was necessary for *163 large, heavy, commercial trucks to traverse Bayouside Drive to conduct business at the Boudreauxs’ property.
The record establishes that Bayouside Drive was initially constructed as a farm-to-market road that was overlaid with asphalt and concrete in the late 1960s. The roadway is substandard by current standards in that it is rather narrow and does not have much of a shoulder. At some point in the early 1980s, the Terrebonne Parish Police Jury, the pre-cursor to the TPCG, instructed its staff to place | ¡¡signage establishing a five-ton limit on the road to prevent large truck traffic.[3] Thereafter, the TPCG received a petition from residents in the area to enact a five-ton weight limit restriction on the road. In response, the TPCG hired Wave Tech, Inc., an engineering firm, to perform nondestructive testing of Bayouside Drive to establish the condition and capacity of the roadway. The TPCG relied on the findings of the Wave Tech report to support the establishment of a fifteen-ton weight limit restriction.
In October 1996, the TPCG enacted Ordinance 5685, which, among other things, established a fifteen-ton weight limit restriction on the entirety of Bayouside Drive. The ordinance amended the Terre-bonne Parish Code dealing with motor vehicles and traffic and provided, in pertinent part, as follows:
The entire length of Bayouside Drive is hereby designated as a 15-ton weight limit zone, and appropriate “15 Ton Weight Limit” signs shall be erected and maintained along the said roadway to create and maintain said zone. Any vehicle traveling on Bayouside Drive shall respect the signs erected and maintained under the provisions of this section.
Mr. Boudreaux testified that he was aware that signs regarding the fifteen-ton weight limit were posted along Bayouside Drive in 1996 or 1997. Nevertheless, despite the adoption of this ordinance and the presence of the signs, Tradewinds continued to operate its business at the Bayouside Drive location without regard for the weight restrictions.
Furthermore, Tradewinds continued to expand, so that by 1999 or 2000, it owned twelve to fourteen tandem dump trucks, a fleet of eighteen-wheel trailer trucks, three bulldozers, and two excavators.[4] According to Mr. Boudreaux, each of the tandem dump trucks weighed approximately ten or eleven tons empty and up to twenty-five tons when fully loaded. He further testified that each eighteen-wheeler weighed approximately sixteen tons empty and up to forty-four tons when fully loaded. Tradewinds used these vehicles to transport dirt, river sand, limestone, and other 14materials to and from the Bayouside Drive location in clear violation of Ordinance 5685.
Nevertheless, Mr. Boudreaux testified that law enforcement officials did not begin to enforce the ordinance until 1999, at which time various citations were given to drivers employed by Tradewinds. Law enforcement officials continued to issue citations to the drivers in 2000, and Mr. *164 Boudreaux testified that his drivers regularly violated the ordinance, because many of the trucks used in the business weighed more than fifteen tons even when empty.
On May 9, 2000, David Norman, who was the attorney for the Boudreauxs and Tradewinds at the time, wrote a letter to the TPCG, complaining that the weight limit would effectively prohibit some or all of Tradewinds’ trucks from traveling on Bayouside Drive. The letter asserts that the weight limit “presents obvious issues of unconstitutional regulatory takings since Mr. Boudreaux was operating long before this ordinance was passed.” According to the letter, Mr. Boudreaux could not continue to operate his business in light of the enforcement of the weight limit ordinance, and he had no economically viable alternative to operating at his current location. The letter further requested alternative relief from the parish, possibly in the form of a permit, for which the ordinance did not provide a procedure.
In December 2000, the TPCG adopted Ordinance 6362, which, among other things, repealed the weight limit restrictions established in Ordinance 5685, and enacted section 18-30 of the Terrebonne Parish Code dealing with motor vehicles and traffic. This section re-enacted the fifteen-ton weight limit on Bayouside Drive[5] and allowed for a person to obtain a permit to operate vehicles in excess of the weight limit.[6] Specifically, section 18-30 provides:
(a)No person shall drive or operate a vehicle having a total weight in excess of fifteen (15) tons, without obtaining a permit from the director of public works, or his designee, in accordance with section 18-32 of this [ 5Code, on the following named streets or portions of streets:
Bayouside Drive
(b) The council from time to time may designate other specific streets or portions of streets on which the maximum weight limit set forth in this section applies.
(c) Any person who violated the weight restrictions imposed herein shall, in addition to the general penalties set forth for violation of a parish ordinance be liable to the parish government for any damages incurred as a result of the driving or operation of a vehicle in excess of fifteen (15) tons on any of the designated roads or streets set forth herein.
Section 18-32 provides for the following with regard to permit applications:
(a) Applications for permits to drive or operate a vehicle having a total weight in excess of the weight limits established by this Article shall be made to the director of public works, or his designee, on forms available at the department of public works. The department of public works shall notify the council member for the district for which an application is submitted. The permit application in addition to stating the name of the persons or business making the application, specify what type of vehicles the applicant is requesting for permit and the [applicant’s] anticipated duration of roadway usage.
(b) Applications required by this Article to be submitted to the director of public *165 works shall be promptly evaluated by the department of public works based on objective criteria related to the impact of the proposed use on a parish roadway and the department shall determine the term of the permit and appropriate permit requirements for mitigation or reparation of damages, such as bonding or insurance. If the director of public works, or his designee, grants a permit, he shall notify the applicant of that determination, within thirty (30) days from the application date, by written notice to the address listed on the application form and the applicant shall within fifteen (15) days of receipt of the administrative determination, provide proof of compliance with the conditions of the permit or file an appeal, to protest the required conditions, as set forth in section 18-32(d).
(c) If the director of public works, or his designee, denies a permit application, he shall notify the applicant of that determination, within thirty (30) days from the application date, by written notice to the address listed on the application form. The applicant may appeal the denial as set forth in section 18-32(d).
(d) If the applicant is aggrieved by the administrative decision, he may appeal the decision by filing a written application for appeal, within fifteen (15) days of receipt of the administrative determination, to the council, which may hear or deny the appeal within sixty (60) days. If the council grants an application for appeal, it shall decide by motion whether to affirm, modify, or reverse the administrative determination.
Tradewinds and its drivers continued to violate the weight limit restrictions on | (¿Bayouside Drive even after the adoption of Ordinance 6362, without applying for a permit. On January 18, 2002, Jerry Lar-penter, the Sheriff of Terrebonne Parish, sent a letter to Mr. Boudreaux, advising him that he was to cease operating trucks on Bayouside Drive in violation of the weight limitations. Sheriff Larpenter further warned Mr. Boudreaux that citations would be issued if Mr. Boudreaux or his drivers continued to operate trucks in violation of the weight limit restrictions on Bayouside Drive. Thereafter, on January 28, 2002, the Boudreauxs and Tradewinds initiated the instant lawsuit by filing a motion for temporary restraining order, preliminary injunction, and permanent injunction against the TPCG.[7]
The trial court granted the temporary restraining order and set the matter for hearing on the issue of the preliminary injunction. However, after a hearing on the preliminary injunction, the trial court noted that, because plaintiffs had not completed the permit process at the time of the hearing, the court was not in a position to determine the issue.[8] Therefore, the trial court denied the plaintiffs’ request for a preliminary injunction.
At the hearing on the preliminary injunction, the plaintiffs also amended their petition to request a declaratory judgment, alleging that the ordinances were unconstitutional as applied to their business. Specifically, the amended petition alleged that Ordinance 5685 violated their rights to property, due process, and equal protection under the laws. Finally, the plaintiffs sought damages for inverse condemnation, *166 claiming that the application of the ordinances had effectively taken their property rights without just and due compensation.
Meanwhile, the plaintiffs continued the application process in an effort to obtain a permit to operate their trucks on Bayou-side Drive. On April 18, 2002, the TPCG, through the assistant parish attorney, sent a letter to the plaintiffs and their attorney advising them that a permit would issue for six months upon certain conditions being 17met, including the production of “insurance, surety bond, or other acceptable security, in favor of the Parish, ... in the amount of $125,000 to cover the cost of any property damage caused to [Bayouside Drive] by the use of [their] overweight vehicles.” In an effort to comply with these conditions, the plaintiffs attempted to obtain a surety bond from Marsh USA, Inc. (Marsh). According to the plaintiffs, the bond company required that they submit audited financial statements for the company prepared by a certified public accountant, as well as a fee of approximately $2,500 to $3,125 for the bond. In addition, the plaintiffs contended that it would have cost them between $6,000 and $12,000 to pay the certified public accountant to provide the audited financial statements.[9] Because they believed these conditions were too onerous, the plaintiffs never obtained a surety bond as required by the terms of the permit.
The parties continued to negotiate in an effort to come to an agreement on the terms of the permit; however, no agreement was ever reached. On November 20, 2002, the plaintiffs sent a letter to the Terrebonne Parish Council (council), alleging that their permit application had been constructively denied. The plaintiffs requested that the council overrule the administration and issue a permit to them, either with no requirement for a bond or with a bond in a much lower amount. Nevertheless, the parties continued to negotiate after the filing of the appeal and, although the appeal was scheduled for hearing before the council on at least two occasions, it was continued each time on the request of the plaintiffs’ attorney. As a result, the appeal was never heard by the council. In addition, the plaintiffs never complied with the conditions established for the permit, and no permit was ever issued.
In July 2004, the plaintiffs filed a second amended petition, alleging that, since the filing of the original petition, their business had been taken away from them due to the passage and enforcement of the ordinances and the failure of the TPCG to act upon the plaintiffs’ permit application. According to the plaintiffs, under such circumstances a 1 spreliminary injunction would no longer be of use to them. The plaintiffs further alleged that they had been forced to start a new business because their trucks could no longer run.[10] Therefore, the plaintiffs restated their earlier claim for inverse condemnation, contending that enforcement of the ordinances has deprived them of virtually all economically viable use of the Bayouside Drive property. In addition to the damages requested in the earlier amended petition, the plaintiffs also prayed for costs of court and *167 reasonable attorney fees pursuant to LSA-R.S. 13:5112.
The trial court conducted a bench trial, after which it took the matter under advisement. On March 29, 2010, the trial court signed a written judgment in favor of the TPCG, dismissing the plaintiffs’ claims against it, with prejudice. The trial court further provided written reasons, finding that the plaintiffs had failed to carry their burden of proving that the ordinance in question was unconstitutional. Plaintiffs have appealed.
DISCUSSION
The question of whether the ordinances at issue are constitutional is a legal question, which will be reviewed de novo. See State v. All Property and Casualty Insurance Carriers Authorized and Licensed to do Business in State, 06-2030 (La.8/25/06), 937 So.2d 313, 319. An ordinance, like any act of the legislature, is presumed to be constitutional. Everhardt v. City of New Orleans, 253 La. 285, 289, 217 So.2d 400, 401 (1968); Wes-T-Erre Development Corporation v. Terrebonne Parish, Through Police Jury of Terrebonne Parish, 416 So.2d 209, 215 (La.App. 1st Cir.), writ denied, 421 So.2d 251 (La.1982). Therefore, the party challenging the validity of the ordinance has the burden of establishing by clear evidence that the ordinance is unconstitutional. Wes-T-Erre Development Corporation, 416 So.2d at 215; see also State v. Citizen, 04-1841 (La.4/1/05), 898 So.2d 325, 334.
Plaintiffs contend that the TPCG enacted the ordinances in violation of Article I, § 4 of the Louisiana Constitution, as well as the Fifth Amendment to the United States | ciConstitution.[11] At the time these ordinances were adopted, Article I, § 4 of the Louisiana Constitution provided, in pertinent part:[12]
(A) Every person has the right to acquire,- own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
(B) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.... In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss....
[[Image here]]
Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law. LSA-C.C. art. 477; State Through Dept. of Transp. and Development v. Chambers Inv. Co., Inc., 595 So.2d 598, 603 (La.1992); see also LSA-Const. art. I, § 4. However, the rights of a landowner are always “subject to reasonable statutory restrictions and the reasonable exercise of the police power.” LSA-Const. art. I, § 4(A).
The police power is a power inherent in every governing authority to govern men and things and, within constitutional limits, to prescribe regulations for *168 the promotion of public health, safety, morals, and general welfare. Wes-T-Erre Development Corp., 416 So.2d at 214. The test of whether an ordinance or regulation is a constitutionally valid exercise of police power depends on whether, under all circumstances, the regulation is reasonable and whether it is designed to accomplish a purpose properly falling within the scope of the police power. Id.
The parties do not dispute that the TPCG has the power to pass ordinances to establish weight limits on the roads within the parish. See LSA-R.S. 48:481; LSA-R.S. 33:1236. However, the plaintiffs contend that the passage of these ordinances | ^constitutes an inverse condemnation of their property in violation of the constitutional provisions above. To establish inverse condemnation, a party must show that (1) a recognized species of property right has been affected; (2) the property has been taken or damaged in a constitutional sense; and (3) the taking or damaging was for a public purpose under Article I, § 4 of the Louisiana Constitution. Suire v. Lafayette City-Parish Consolidated Government, 04-1459 (La.4/12/05), 907 So.2d 37, 60. As the trial court noted in its written reasons for judgment, there does not appear to be any dispute that any alleged taking or damaging of the Bayou-side Drive property by the passage of the ordinances would have been for a public purpose. Furthermore, it is clear that the imposition of the fifteen-ton weight limit on Bayouside Drive affected the plaintiffs’ ability to use that property in the manner it had previously been used, at least without their having to go through the additional steps necessary to qualify for a permit. Therefore, it appears that the only question left to be decided with regard to the issue of inverse condemnation is whether the Bayouside Drive property has been taken or damaged in a constitutional sense.
In Annison v. Hoover, 517 So.2d 420, 423 (La.App. 1st Cir.1987), unit denied, 519 So.2d 148 (La.1988), this court recognized a distinction between regulatory takings and physical takings of property. According to the court, physical takings are easily identifiable, while regulatory takings may or may not be. In addition, the court held that regulatory programs that adversely affect property values did not constitute a taking unless it destroyed a major portion of the property’s value. Id. Only after the court determines that there has been a destruction of a major portion of the property’s value can the question of compensation be considered. Id.
The plaintiffs suggest that the TPCG’s passage of the weight limit restrictions constitutes an unconstitutional taking of the Bayouside Drive property, because it deprived the plaintiffs of the practical economic uses of the property and substantially diminished the value of the property, without expropriation, due process, and compensation. Specifically, the plaintiffs contend that, by passing these ordinances, the luTPCG destroyed Trade-winds’ business value, as plaintiffs could no longer operate their trucks to haul dirt, sand, and limestone from the Bayouside Drive property to their customers. However, a review of the record does not support the plaintiffs’ contentions.
The record demonstrates that the fifteen-ton weight limit on Bayouside Drive was just one facet of a parish-wide plan for establishing weight limits on roads within the parish and that the weight limit established on Bayouside Drive was the most liberal limit on roadways in the parish. The record further demonstrates that the weight limit on Bayouside Drive was established after consultation with experts and in reliance on them recommenda *169 tions.[13] Testimony in the record further indicated that the weight limit on Bayou-side Drive was adopted in response to concerns about the condition of the road raised by other residents in the area. There was also evidence that the area of the road around the entrance to the plaintiffs’ property was torn up, possibly due to the constant traffic from the plaintiffs’ heavy trucks. It was not unreasonable for the TPCG to establish weight limits on a road that was being damaged and for which it was financially responsible.
It is also clear that the plaintiffs had the ability to continue conducting their business at the Bayouside Drive location by complying with the requirements necessary to obtain a permit that would have allowed them to operate their trucks with a total weight in excess of fifteen tons on Bayouside Drive. However, for whatever reason, the plaintiffs chose not to comply with these requirements. The plaintiffs have attempted to place the blame for the loss of their business on the TPCG’s failure to provide a procedure for obtaining a permit in the original ordinance. However, the record clearly demonstrates that, despite their knowledge of the weight limits on the road in 1996 or 1997, the plaintiffs continued to operate out of the Bayou-side Drive location without interference until 1999. Furthermore, even after law enforcement officials began to 11gwrite citations and issue warnings for the violation of the ordinance, the plaintiffs and their drivers continued to openly operate their business in clear violation of the ordinance. It was not until the year 2000 that the plaintiffs attempted to communicate with the TPCG about the ordinance, and later that year, the TPCG enacted a new ordinance to allow for a procedure to obtain a permit to operate vehicles in excess of the weight limit. Nevertheless, the plaintiffs failed to even apply for a permit until 2002. Even then, however, the plaintiffs failed to comply with the requirements set forth by the TPCG to obtain the permit.
The plaintiffs have attempted to demonstrate that they could not comply with the requirements to obtain a permit, because the amount of security required by the TPCG was excessive. In support of this contention, they provided a letter from Marsh, the company from which they had attempted to obtain a surety bond, in which the company suggested that it found it extremely unusual that the parish would ask for a bond in the amount of $125,000, when the overweight bonds it usually saw were much lower. However, the TPCG demonstrated that it had relied on DOTD guidelines in establishing the amount of security it would request in this matter. Furthermore, the record indicated that, in an unrelated matter, another company was required to post a $875,000 letter of credit for an overweight permit to operate on Bayouside Drive. Accordingly, we find that the plaintiffs have failed to carry their burden of proof that the passage of the ordinances caused the Bayouside Drive property to be taken or damaged in a constitutional sense.
The plaintiffs further contend that the ordinances violated their rights to both procedural and substantive due process under the United States and Louisiana Constitutions, which prohibit a person from being deprived of life, liberty, or property, except by due process of law. *170 See U.S. Const. amends. V and XIV; LSA-Const. art. I, § 2. The central meaning of procedural due process is well-settled. Persons whose rights may be affected by state action are entitled to be heard at a meaningful time and in a meaningful manner, and in order that they may enjoy that right, they must first be | ianotified. In re Adoption of B.G.S., 556 So.2d 545, 549 (La.1990). We note, however, that the adoption and amendment of the ordinances was a legislative function undertaken by the TPCG as part of its general police power to regulate the roads in Terrebonne Parish. See LSA-R.S. 48:481; LSA-R.S. 33:1236. When a governmental action is characterized as legislative or quasi-legislative, procedural due process requirements do not apply. Jackson Court Condominiums, Inc. v. New Orleans, 874 F.2d 1070, 1074 (5th Cir. 1989); Messina v. St. Charles Parish Council, 03-644 (La.App. 5th Cir.12/30/03), 865 So.2d 158, 161, writ denied, 04-0285 (La.3/26/04), 871 So.2d 354, cert. denied, 544 U.S. 1060, 125 S.Ct. 2512, 161 L.Ed.2d 1109 (2005).
We further note that, although the TPCG never denied their permit application, the plaintiffs did schedule two appeal hearings before the council, claiming that their permit application had been constructively denied. On each occasion, the hearing was continued on motion of the plaintiffs’ attorney. Therefore, we find that the plaintiffs cannot now be heard to complain that they were not provided an opportunity for a meaningful hearing in this matter. Accordingly, there was no violation of their right to procedural due process.
The plaintiffs also contend that the ordinances violated their right to substantive due process, suggesting that the ordinances interfered with their property interests in a way that was arbitrary or capricious. Substantive due process may be broadly defined as the constitutional guaranty that no person shall be arbitrarily deprived of his life, liberty, or property. Babineaux v. Judiciary Commission, 341 So.2d 396, 400 (La.1976). The essence of substantive due process is protection from arbitrary and unreasonable action. Id.
In order to prove a violation of substantive due process, the plaintiffs must first establish the existence of a constitutionally protected property or liberty interest. Standard Materials, Inc. v. City of Slidell, 96-0684 (La.App. 1st Cir.9/23/97), 700 So.2d 975, 985-86. Once that interest has been established, a violation of substantive due process still requires arbitrary and capricious conduct by the governing authority. A114government decision regulating a landowner’s use of his property offends substantive due process if the government action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Standard Materials, Inc., 700 So.2d at 986. In other words, government action comports with substantive due process if the action is rationally related to a legitimate governmental interest. Id.
Assuming that the plaintiffs can satisfy the first prong of the test by establishing the existence of a constitutionally protected property or liberty interest, the plaintiffs clearly cannot meet the second prong of the test. The TPCG’s conduct in passing the ordinances to establish a weight limit is clearly rationally related to its legitimate interest in protecting a road for which it was financially responsible. Keeping such a road in good repair is necessary and rationally related to public safety. As noted previously, evidence in the record indicated that the TPCG commissioned a study on the impact the heavy trucks would have on the road and used the information that study provided in de *171 termining the appropriate weight limit to establish; therefore, the weight limit was clearly not established in an arbitrary or capricious manner. Accordingly, we find that the plaintiffs are unable to sustain a claim that their substantive due process rights were violated.[14]
Finally, plaintiffs contend that the ordinances violated their right to equal protection under the laws pursuant to the Fourteenth Amendment of the United States Constitution and Article I, § 3 of the Louisiana Constitution. Generally, the state constitutional guarantee of equal protection mandates that state laws affect alike all persons and interests similarly situated. This guarantee does not, however, take from the legislature all power of classification. Beauclaire v. Greenhouse, 05-0765 (La.2/22/06), 922 So.2d 501, 505.
1 lain Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1107 (La.1985), the supreme court set forth a three-tier evaluation to determine whether there had been a violation of equal protection, as follows:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex,. culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. [Footnotes omitted.]
It is clear that the third level of scrutiny applies in this case, because there is no classification based on race, religious beliefs, birth, age, sex, culture, physical condition, or political beliefs. When the third level of scrutiny applies, the law creating the classification is presumed to be constitutional. Thus, the party challenging the constitutionality of the law has the burden of proving it is unconstitutional by showing the statute fails to serve a legitimate governmental purpose. Beauclaire, 922 So.2d at 505-06. Great deference is given to legislative determinations, and a classification is constitutional if it has a rational relationship to a valid state interest. Beauclaire, 922 So.2d at 506.
As discussed previously, the weight limit is clearly rationally related to the legitimate governmental purpose of preserving the life span of the road and keeping it in good repair. The plaintiffs suggest in their brief to this court that there may have been some selective enforcement of the ordinances, such that others were not cited for violating the ordinances, while the plaintiffs were repeatedly cited. Assuming this to be true *172 does not change the analysis of the language of the ordinances for equal protection purposes. Furthermore, the enforcement of the ordinances was carried out by officials with the Terrebonne Parish Sheriffs Department and other law enforcement departments, which have not been made defendants in this matter.[15] Accordingly, we hr,find that the plaintiffs are unable to sustain a claim that they have been deprived of equal protection under the laws.
CONCLUSION
For the above reasons, we affirm the judgment of the trial court, dismissing the plaintiffs’ claims against the Terrebonne Parish Consolidated Government. All costs of court are assessed to the plaintiffs, Robert Boudreaux, Jessica Boudreaux, and Tradewinds Offshore Services, Inc. d/b/a RB Enterprises.
AFFIRMED.

. The trial court judgment also dismissed all claims against Terrebonne Parish Sheriff Jerry Larpenter who was dismissed from these proceedings by mutual consent of the parties at the time of trial The plaintiffs have not appealed that portion of the judgment. Eugene Trahan had been previously dismissed from the proceedings by an earlier judgment.

. Bayouside Drive is not a state highway, but a two-lane, paved parish road.

. The record indicates that there was no ordinance establishing this five-ton weight limit; however, according to the testimony of Al Levron, who was the Public Works Director of Terrebonne Parish for many years and was the Parish Manager at the time of his testimony, such matters did not need to be handled by ordinance prior to 1984.

. According to Mr. Boudreaux, the tandem trucks had a capacity of fourteen to fifteen yards of material, and the eighteen-wheel trailer trucks would carry between twenty-four and twenty-six yards of material.

. Although Bayouside Drive is the only road to which the fifteen-ton weight limit applies, Ordinance 6362 also establishes various weight limits on other roads in the parish, with the fifteen-ton weight limit on Bayouside Drive being the most liberal.

. Section 18-31 exempts emergency vehicles and vehicles performing the services of local government, including school buses, garbage, and light delivery trucks from the provisions of the posted weight limit restrictions.

. As noted previously, Sheriff Larpenter and Eugene Trahan were also named as defendants in this matter; however, both have been dismissed from these proceedings, and neither is a party to this appeal.

. At the hearing, Mr. Boudreaux testified that he had recently applied for a permit, but had not yet received a response.

. Mr. Boudreaux testified that Tradewinds could have afforded the fee for the bond, but it could not have afforded the fee for the audit every six months; however, Mr. Norman, the plaintiffs’ former attorney, testified that he was not aware whether the audit requested by the bond company would have been needed every six months.

. At trial, it was established that this new business, which involves crew boats, is more profitable than the former dump truck business.

. This amendment provides, in pertinent part, "... nor shall private property be taken for public use, without just compensation.” U.S. Const, amend. V.

. Paragraph (B) of Article I, section 4 of the Louisiana Constitution was amended by 2006 La. Acts, No. 851, § 1, approved September 30, 2006; however, the relevant substantive language above is largely unchanged.

. Specifically, the TPCG commissioned a study from Wave Tech, an engineering firm, which determined that Bayouside Drive would have a life span of approximately eight- and-one-half years with a fifteen-ton weight limit, considering the traffic flow at the time of the report. As noted previously, it was based on this report that the TPCG settled on the 15-ton weight limit for Bayouside Drive.

. In Standard Materials, Inc., 700 So.2d at 983, the court, in reliance on Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 194, 105 S.Ct. 3108, 3116, 3120, 87 L.Ed.2d 126 (1985), suggested that a substantive due process claim might not be ripe until the governmental entity charged with implementing the challenged regulations has reached a final decision regarding the application of the regulations to the property at issue. However, the court then discussed the merits of the substantive due process claim "in the event that this determination regarding ripeness is erroneous.” Standard Materials, Inc., 700 So.2d at 983. We have also discussed the merits of the substantive due process claim in this matter for the purpose of judicial economy.

. The sheriff was originally a defendant, but he was dismissed prior to trial.