DENNIS R. BAGNERIS, SR., Judge.
11 Plaintiffs/Appellants, Lengsfield Lofts Condominium Owners’ Association, Inc., Joshua Rubenstein, Russ Herman, and Sandra Herman, appeal the trial court’s denial of their request for a preliminary injunction.[1] For the following reasons, we hereby affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On November 13, 2013, the Central Business District Historic District Landmarks Commission (“CBDHDLC”) approved the planning and design of a sixteen story, multi-use, residential building, to be located at 1100 Annunciation Street, New Orleans, Louisiana, hereinafter referred to as “the Tracage Project.” On November 22, 2013, plaintiffs filed an appeal with the New Orleans City Council (“City Council”), which on January 9, 2014 voted unanimously to approve the CBDHDLC’s conceptual approval of the Tracage Project and denied plaintiffs’ appeal.[2]
|2On January 24, 2014, plaintiffs filed a petition against the City of New Orleans (“the City”) and the CBDHDLC requesting a judicial review, declaratory judgment, injunctive relief, and request for stay arguing that the City Council acted arbitrarily and capriciously in its denial of the appeal. Plaintiffs allege that the City Council ignored the CBDHDLC’s guidelines to preserve and protect the integrity of the historical district and that Ordinance 25,068 MCS, as enacted and reenacted, contains “spot zoning,” which is a violation of the Louisiana Constitution and is not consistent with the Master Plan for the City. On that same date, the trial court issued a stay order, without bond, preventing the City and the CBDHDLC “from issuing any certificates of appropriateness, construction permits, demolition permits, or any other permits^ or performing any administrative reviews related to the property located at 1100 through 1110 Annunciation Street.” On February 18, 2014, the owners of the Tracage Project, Tracage Development, LLC, filed a petition for intervention.
After a hearing, the trial court denied plaintiffs’ motion for preliminary injunction. In its reasons for judgment, the trial court stated, in pertinent part:
This Court finds that Plaintiffs could not establish they were entitled to the relief sought, and thus must deny their request for a preliminary injunction. Plaintiffs alleged that the HDLC was arbitrary and capricious because it did not follow its own guidelines in rendering its opinion. In particular, Plaintiff’s expert, Ms. Villavaso, testified that the HDLC approved the opinions of the ARC [Architectural Review Committee] without considering whether submission complied with all ten of the HDLC’s *914 guidelines. Mr. Elliott Perkins, the Executive Director of the City of New Orleans’ Historic District Landmarks Commission, testified that applicants are not required to meet all ten elements of their guidelines, but rather the elements are suggested “design principles”. Regardless, Mr. Perkins stated, the ARC recommended approval of the Tracage project because they felt the ^design sufficiently met the HDLC guidelines. Additionally, Plaintiffs allege that the City Council acted arbitrarily and capriciously when they denied the appeal because they did not have the entire administrative record-in particular the staff report from the HDLC — in front of them to review when they made their decision. However, the Defendants offered testimony (and evidence in conjunction with that testimony) from Mr. Perkins, which confirmed that he not only emailed the report to the legislative aide of the district councilperson hearing the appeal, but he was also present at the City Council meeting and read the staff report into the record.
The Court recognizes its role as a judicial review of the Council’s decision. It is not the province of the Court to supplant its opinion in place of the deliberative process of the Council. The Court finds the Council did not act in an arbitrary and capricious manner in rendering its decision.
The Court does not find that Plaintiffs made a prima facie showing, and as such, denies their Request for Preliminary Injunction.
Plaintiffs now appeal this final judgment and allege the following assignments of error: (1) the trial court abused its discretion when it failed to limit the appeal to the administrative record; (2) the trial court abused its discretion when it failed to find that the CBDHDLC and/or the City Council acted arbitrarily and capriciously; and (3) the trial court abused its discretion when it failed to address the unconstitutional spot zoning issue.
STANDARD OF REVIEW
“A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties, pending trial on the merits.” Elysian Fields Church of Christ v. Dillon, 08-0989, p. 6 (La.App. 4 Cir. 3/18/09), 7 So.3d 1227,1231. A “court may hear an application for a preliminary injunction ... upon the verified pleadings or supporting affidavits, or may take proof as in Lordinary cases.” La. C.C.P. art. 3609. Further, a trial court has great discretion in the granting or denial of a preliminary injunction, and that decision will not be disturbed on review absent a clear abuse of that discretion. See Yokum v. Pat O’Brien’s Bar, Inc., 12-0217, p. 6 (La.App. 4 Cir. 8/15/12), 99 So.3d 74, 80.
To prevail in the trial court on a petition for preliminary injunction, the petitioners are required to establish by pri-ma facie evidence that: (1) they will suffer irreparable injury, loss, or damage if the motion for preliminary injunction is not granted; and (2) they are entitled to a preliminary injunction through at least a showing that they will likely prevail on the merits of the case. See General Motors Acceptance Corp. v. Daniels, 377 So.2d 346, 348 (La.1979). See also Historic Restoration, Inc. v. RSUI Indem. Co., 06-1178, p. 11 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 208; La. C.C.P. art. 3601.
DISCUSSION
In their first assignment of error, plaintiffs argue that the trial court abused its discretion when it admitted evidence and documents into the record that were not in the administrative record. Specifically, plaintiffs argue that the trial court was only to review the administrative record in making its decision of whether the City *915 Council acted arbitrarily and capriciously. In response, the City argues that plaintiffs have treated this matter as a preliminary injunction and have expanded the scope of the litigation by asserting ordinary causes of action, seeking discovery, and offering live testimony, including expert testimony on the subject of their judicial review claim. After a review of the record, we find no merit in plaintiffs’ argument that the trial court erred in failing to limit its review to the administrative record.
^According to section 84 — 134(b) of the City’s Code of Ordinances, “any person aggrieved by any decision of the city council affecting such district shall have the right to file a civil suit within 30 days from the date of decision in a court of competent jurisdiction under the usual rules of procedure governing same with the right to stay orders and injunctive relief provided the situation warrants it.” The Louisiana Constitution art. Y, § 16, provides that a district court shall have “original jurisdiction of all civil and criminal matters” as well as “appellate jurisdiction as provided by law.” To determine whether plaintiffs invoked the appellate jurisdiction of the court, or whether it, in fact, filed suit under the court’s original jurisdiction, we must examine the petition itself. We look through a pleading’s caption, style, and form to determine its substance and to do substantial justice to the parties. La. C.C.P. art. 865. Plaintiffs’ petition asserts a claim for judicial review as well as a claim for declaratory judgment and injunc-tive relief, and a request for a stay. Throughout the litigation, plaintiffs sought written discovery from the City, including requests for admission, requests for production of documents, and subpoenas. Further, plaintiffs received permission from the trial court to present live testimony at the preliminary injunction hearing and to depose city employees Leslie Alley and Elliott Perkins. Plaintiffs also retained Corinne Montinique Ducre-Villava-so, an expert witness in the area of land use and zoning and urban regional planning, to testify at the preliminary injunction hearing. Thus, it is clear from the record that plaintiffs did not treat the case as merely an appeal but rather invoked the district court’s original jurisdiction. Accordingly, we find no error in the trial court’s decision to consider evidence outside the administrative record.
lfiIn their second assignment of error, plaintiffs argue that the trial court abused its discretion when it failed to find that the CBDHDLC and the City Council acted arbitrarily and capriciously. Plaintiffs argue that the CBDHDLC and the City acted arbitrarily and capriciously in approving the Tracage Project when the project failed seven of the ten design principles that were adopted by the Historic District Landmarks Commission (“HDLC”). The City argues that the City Council held a public hearing, heard the recommendation from the City Planning Commission, and received testimony and documentation from both proponents and opponents of the project before denying plaintiffs’ appeal. Thus, the City argues that the City Council weighed both sides of the issue and ultimately chose to affirm the CBDHDLC’s design approval.
As stated by the Louisiana Supreme Court in Lake Terrace Property Owners Ass’n v. City of New Orleans, 567 So.2d 69, 74-75 (La.1990):
In reviewing the decisions of public bodies (the city council in the instant case), the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless' such bodies abuse this power by acting capriciously or arbitrarily. Generally, “capriciously” has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a conclusion *916 contrary to substantiated competent evidence. The word “arbitrary” implies a disregard of evidence or the proper weight thereof, (internal citations omitted).
The record contains the minutes of the City Council meeting whereby council-members conducted a thorough analysis of the Tracage Project before approving its design. As stated by Councilwoman Cantrell when making her motion to deny plaintiffs’ appeal and approve the Tracage design:
... the height is in full compliance with the Lafayette Square Warehouse District refined height plan interim 17zoning district that was approved by the Council in 2012 and extended by this Council several months ago. The developers have amended their design twice in response to the feedback from HDLC as well as the ARC. And the HDLC’s conceptual approval of the revised plan is based on a thorough and proper review of all relevant design issues.
Councilwoman Head also stated that “... when HDLC gives approvals or rejects, I do think we need to protect the sanctity of the process. And only when they [HDLC] are outside of the range of discretion that is rational or they are arbitrary or capricious should we then interject our opinion.”
Director Elliott Perkins, the Executive Director of the City of New Orleans Historic District Landmarks Commission, also testified at the trial court hearing. He testified that he provided a written report to the City Council detailing the project history as well as a summary explaining the CBDHDLC’s analysis of the project pursuant to the design 'guidelines. Mr. Perkins also testified that a new project does not have to meet all ten of the HDLC design-review concept guidelines and that some of the guidelines carry more weight than others in order to be approved.
The record evidences the fact that the City Council conducted a thorough analysis in finding that the project was rational and within the discretion of the HDLC and CDBHDLC. Accordingly, we find no merit in plaintiffs’ argument that the CBDHDLC and City Council acted arbitrarily and capriciously in approving the Tracage Project.
In their third assignment of error, plaintiffs argue that the trial court abused its discretion when it failed to address the spot zoning issue and the fact that the Tracage Project is in violation of the City’s Home Rule Charter. In response, the City argues that the City Council granted the Tracage project a conditional use ^permit in 2006 for the construction of a twenty-four floor building, and that this permit allowed the Tracage site to be “grandfathered” in prior to the City Council’s limiting the building height in the Warehouse District in 2012.[3]
 Zoning by nature is a legislative function and is granted to local authorities by both Louisiana statute and its constitution. La. R.S. 33:4721; La. Const, art. VI, § 16. The presumption of validity attached to zoning ordinances is a well-established principle of law in Louisiana. It applies to all zoning ordinances, including piecemeal and spot zonings. Palermo Land Co., Inc. v. Planning Com’n of Calcasieu Parish, 561 So.2d 482 (La.1990). In Palermo, the Supreme Court explained:
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law. Whether an ordinance bears the requisite relation *917 ship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld, (citations omitted)
561 So.2d at 492.
First, we note that the reasons for judgment are not the judgment itself, and appeals are taken from the judgment, not the written reasons for judgment. La C.C.P. art. 1918. Although the trial court did not address the spot zoning issue in his reasons for judgment such does not mean the court failed to address the issue. |flThe trial court judgment simply denied plaintiffs’ motion for preliminary injunction.
Second, we do not find that the record supports plaintiffs’ argument that the Traeage project resulted in unconstitutional spot zoning. At the hearing, Robert “Bob” Rivers, the Executive Director of the City Planning Commission, testified that there were two categories of properties not subject to the 2012 Interim Zoning (“IZD”) limited building heights in the Warehouse District. The two categories of properties not subject to the 2012 IZD restrictions are (1) projects that had previously received the City’s approval before the IZD and (2) public spaces, including parks and neutral grounds. In regard to the Traeage Project, Mr. Rivers testified that it fell into category one because it had been previously approved by the City Council. Further, Mr. Rivers testified that the Traeage Project is not a spot zoning and that it is consistent with the City’s Master Plan. According to Mr. Rivers, the Master Plan is a “prospective guide for the City’s growth over a 30-year period in the future. So it lays out the goals about where we want to be in 30 years and prescribes things that — you know, policy initiatives and land-use recommendations about how we can get there.” Mr. Rivers also testified that the City’s Master Plan does not contain any specific zoning regulations or specific height requirements as “[generally those are things that are left to zoning.” After reviewing the record, we find no merit in plaintiffs’ argument regarding the unconstitutional spot zoning.
For these reasons, we hereby affirm the judgment of the trial court, which denied the plaintiffs’ motion for preliminary injunction.
AFFIRMED

. Plaintiffs Joshua Rubenstein, Russ Herman, and Sandra Herman are owners of residential units in the Lengsfield Lofts, which are located at 610 John Churchill Chase Street, New Orleans, Louisiana.

. One City Council member was absent and thus unable to vote.

. The Tracage developers subsequendy lowered the building height to sixteen floors.