| FANNY FARMS, LLC, KAREN M. MEYERS AND KENDALL J. MEYERS | * | NO. 2023-CA-0098 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| PLAQUEMINES PARISH GOVERNMENT | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 62-493, DIVISION "A"
Honorable Kevin D. Conner, Judge
\* \* \* \* \* \*
**Judge Rachael D. Johnson**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

Michael Lawrence Mullin
LAW OFFICE OF MICHAEL L. MULLIN
401 Whitney Avenue, Suite 205
Gretna, LA 70056

      COUNSEL FOR PLAINTIFF/APPELLANT

William S. Culver, Jr.
ATTORNEY AT LAW
333 F. Edward Hebert Blvd., Bldg. 100
Belle Chasse, LA 70037

      COUNSEL FOR DEFENDANT/APPELLEE

                    **AFFIRMED**
           **November 21, 2023**

RDJ
RLB
SCJ

Appellants Fanny Farms, LLC. ("Fanny Farms"), Karen M. Meyers ("Karen"), and Kendall J. Meyers ("Kendall") seek review of the District Court's September 27, 2022 judgment rendered in favor of Appellee Plaquemines Parish Government ("PPG"). The district court denied Kendall and Karen Meyers ("The Meyers") claims that they were entitled to damages for inverse condemnation and their due process and equal protection rights were violated when they applied for their borrow pit permit from PPG. For the following reasons, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

Between 2009 and 2015, Plaquemines Parish Government (PPG) constructed a non-federal hurricane protection levee. During this time, PPG was interested in excavated clay to build this levee. The Meyers owned land on the east bank of Plaquemines Parish that contained the clay needed to build the levee.[1] Because of this, they decided to open a borrow pit to sell the clay to PPG. In 2009, Meyers hired Joseph A. Chorens ("Chorens") to handle their borrow pit application. On March 3, 2009, Chorens applied for a borrow pit permit in his

_____

[1] The land owned by Appellant's Karen and Kendall will be referred to as "Meyers' Property" going forward.

name to operate the pit on the Meyers' Property. Chorens' permit was approved on May 7, 2009, which would allow him to operate on the 12.7 acre pit located on the Meyers' property. This permit also required him to backfill[2] after excavating the clay from the Meyers' Property and the borrow pit permit would be valid for one year before needing to be renewed. Upon obtaining the permit, Appellants and Chorens entered into a purchase agreement for Chorens to excavate a minimum of 100,000 cubic yards of clay from the Meyers' Property with a requirement to backfill the pit at the end of excavation. Although there were multiple permit extensions by Chorens, clay was never removed from the Meyers' property. Chorens' permit eventually expired on May 7, 2011, and he passed away on December 25, 2012. On December 13, 2012, Plaquemines Parish enacted 2012 Borrow Pit Ordinance #12-238 ("2012 Ordinance")[3].

On July 21, 2014, the Meyers contracted with Advance Clay Products, LLC ("Advance") to purchase an unspecified amount of clay from the Meyers' Property. On October 3, 2014, Advance and the Meyers applied for a borrow pit permit, to operate a pit that would be approximately 12.7 acres, at the Plaquemines

---

[2] Backfilling is the process of filling an open pit with dredged river sand to pre-excavation level after already excavating the usable clay in that pit.

[3] The pertinent clause in the 2012 Ordinance states:

> Reclamation - Those activities taken to disturbed lands to bring such lands to a Council approved post-extraction use. These activities shall include Backfilling, grading, compacting, soil stabilization, re-seeding, re-vegetation, and planting of nursery stock. Backfilling shall not be required in the event that the Borrow Pit is used exclusively for the providing of fill materials to Plaquemines Parish public levees, whether Federal, State, or locally sponsored projects, and wherein the Borrow Pit is located on the West bank of the Mississippi River, between the southern property line of the property upon which Captain Larry's Seafood is situated (municipal address 11334 Highway 23, Belle Chasse, Louisiana 70037), and the northern property line of the property upon which St. Jude Church is situated (municipal address 24220 Diamond Road, Port Sulphur, Louisiana), to (B) Sand Pits, and to (C) Borrow Pits with operations less than ten (10) acres in size.

Parish permit department. Karen hand delivered the application to Valerie Ragas ("Ragas"), who was the permit clerk for PPG at the time. The Meyers sought to circumvent the backfill requirements when excavating a borrow pit that exceeded 10 acres by classifying the pit as a water feature. The Meyers assert that they should have been granted this exception because other, much larger pits, were granted an exception to backfilling by being classified as a water feature.[4] Ragas testified that the application Karen submitted was insufficient because the form was outdated and that she would need to apply with the new updated form. The form was revised when the 2012 Ordinance was enacted. Prior to receiving the borrow pit permit application from Karen, Ragas received a call from Council Member Percy Griffin ("Griffin"). During this phone call, Griffin instructed Ragas not to accept permit applications if they did not comply with the necessary procedures and requirements as outlined in the 2012 Ordinance.

On October 28, 2014, Karen resubmitted the application to the PPG permit department in compliance with the new form requirements. In this new application, the permit was altered to request approval for a pit approximately 4 to 7 acres.[5] Because the permit application was for a pit less than 10 acres, there would be no backfill requirement if approved. On February 9, 2015, Fisher Sand & Gravel (FSG), a company hired to construct the non-federal hurricane protection levee in Plaquemines Parish, agreed to a Purchase Order Agreement with Advance to extract clay from the Meyers' property. The borrow pit permit was approved and

---

[4] Other companies such as Stella Lands, LLC (Stella) and Levee Materials, Inc. (Scarsdale) have pits that exceed 10 acres but were granted an exception to backfilling because they were considered recreational ponds.

[5] Appellants assert that the application was for a permit of 7 acres and Appellees assert that the application was for a permit of 4-5 acres. This permit application was not introduced into evidence at trial.

issued to Advance on March 9, 2015. On October 18, 2016, FSG entered into a Purchase Order Agreement with the Meyers directly. The contract included FSG acquiring 325,000 tons of clay from the Meyers' pit and that FSG would pay the Meyers $430,000 to excavate the pit. Between December 2, 2015 and July 6, 2017, FSG excavated around 314,049.97 tons of clay from the Meyers pit.

In the meantime, the Meyers organized Fanny Farms, LLC on July 6, 2015 and filed their lawsuit against PPG on September 28, 2015. In their initial petition, the Meyers sought injunctive and declaratory relief and damages against PPG for coercing them through their contractor and violating their due process and equal protection rights. Because the Meyers believed their due process and equal protection rights were violated, they also brought a claim for inverse condemnation against PPG. The Meyers claim they lost between $972,666 and $1,092,395 because PPG prevented them from excavating 324,000 cubic yards of clay. The inverse condemnation claim is meant to compensate them for this loss of income.

On October 14, 2016, PPG filed a motion for summary judgment alleging that the Meyers had no viable claim for due process or equal protection rights violations, no viable claim for inverse condemnation, and that coercion did not occur. PPG also filed a partial summary judgment motion on September 22, 2017, arguing against the inverse condemnation claim made by the Meyers. Both summary judgment motions were denied by the district court.

On November 17, 2017, PPG filed a reconventional demand asserting that the Meyers committed borrow pit permit violations. PPG prayed for a preliminary injunction of the Meyers' borrow pit operations, or, in the alternative, seeking an award for fees and costs associated with the borrow pit having to be in compliance

4

with Plaquemines Parish requirements. The Meyers responded by filing an answer and adding FSG as a third-party defendant. On April 16, 2020, FSG filed two motions for summary judgment against the Meyers. The first motion for summary judgment sought a partial summary judgment in which FSG would be dismissed. The second motion for summary judgment sought to preclude Meyers from: offering evidence to support claims that the borrow pit at issue was in violation of any permits or ordinances; offering evidence in opposition of summary judgment based on Meyers refusal to produce a 1442 representative; and asserting that the 2012 Ordinance was unconstitutionally vague. The district court denied both motions for summary judgment but deferred the issue of constitutionality of the 2012 Ordinance and ordered the matter to be reset.

On July 2, 2020, the Meyers filed a second amended petition and asserted that the 2012 Ordinance was unconstitutionally vague and unenforceable. On May 16, 2022, the district court denied FSG's motion for summary judgment holding that the 2012 Ordinance was not unconstitutionally vague. Shortly before this ruling, on May 6, 2022, PPG filed a motion for summary judgment and exception of no right of action, alleging that the Meyers were unable to prove the claims asserted in their petition and they failed to exhaust the administrative remedies in place to dispute the denial of their first borrow pit application on October 3, 2014. On July 6, 2022, the district court denied both the motion for summary judgment and the exception of no right of action, respectively.

A bench trial was held from July 27, 2022 to July 29, 2022. During the trial, six witnesses testified: Kendall Meyers, Appellant; James R. Danner, expert witness in civil engineering; Holly Sharp, expert witness in accounting and

5

economic loss calculation; Valarie Ragas, Permit Coordinator for PPG; Blair Rittiner, PPG Land Superintendent from 2006 through 2016; and Randy Oustalet, Borrow Pit Monitor for PPG. In addition, the depositions of Karen Meyers; Laird Robertson, manager of Advance Clay Products; and Tommy Fisher, CEO and President of FSG were admitted into evidence. At the conclusion of trial, PPG moved for involuntary dismissal pursuant to La. C.C.P. art. 1672. The district court granted involuntary dismissal on the following issues: the Meyers' request for preliminary and permanent injunction prohibiting enforcement of the 2012 Ordinance; the granting of the Meyers' borrow pit permit; and the Meyers' claim for inverse condemnation. Further, the district court dismissed PPG's reconventional demand against Meyers, thus dismissing FSG as a third party defendant. Lastly, on September 27, 2022, the district court found that the Meyers failed to: meet their burden of proof to show there was a denial of their equal protection and due process rights; prove coercion; and meet the standard for a viable inverse condemnation claim. This timely appeal followed.

On appeal, the Meyers raises the following assignments of error: (1) the trial court erred in determining that the Meyers borrow pit application was treated fairly compared to other similarly situated borrow pit operations; (2) the trial court erred in determining that the other borrow pit operations are not situated similarly to their own; (3) the trial court erred in determining that PPG did not violate the Meyers procedural and substantive due process rights, as well as equal protection rights; and (4) the trial court erred in determining that the Meyers was not deprived of a sufficient property right to have suffered inverse condemnation.

6

**STANDARD OF REVIEW**

When the Appellate Court reviews a case involving a zoning decision made by a public body (such as PPG), the Court will not consider whether the district court was manifestly erroneous in its finding of fact. Papa v. City of Shreveport, 27,045 (La. App. 2 Cir. 9/29/95), 661 So. 2d 1100, 1103. Instead, they review whether the public body was acting in an arbitrary or capricious manner when making its decision. Id. The courts will only interfere with the functions of a public body if it abuses its power by acting capriciously or arbitrarily when making decisions. Herman v. City of New Orleans, 2014-0891 (La. App. 4 Cir. 1/21/15), 158 So. 3d 911, 915. Capriciously can be defined as coming to a decision on a subject when there is no substantial evidence to support it or it is contrary to the evidence given. Id. at 915-916. Arbitrary would be defined as a "disregard of evidence or the proper weight thereof." Id. at 916. "Where permits are granted in similar situations and refused in others, the refusal to grant a permit may constitute non-uniform application of zoning ordinances that is arbitrary and unreasonable." Papa, 661 So. 2d at 1103. "A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether *the result* of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law." Palermo Land Co. v. Plan. Comm'n of Calcasieu Par., 561 So. 2d 482, 492 (La. 1990); Hernandez v. City of Lafayette, 399 So.2d 1179 (La. App. 3 Cir. 1981); Westside Lumber & Supply v. Parish of Jefferson, 357 So.2d 1384 (La. App. 4 Cir. 1978).

## DISCUSSION

## Equal Protection

The Meyers assert that their equal protection rights were violated when they were treated as a "class of one" and denied a fair hearing regarding their initial permit application. The Meyers allege that they are similarly situated to other borrow pit operations but they were the only applicant that was required to backfill for having their borrow pit exceed 10 acres, that was rejected by the PPG permit office rather than PPG council, and was required to apply for their permit on the new form instead of the old form.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 352, 38 S. Ct. 495, 495, 62 L. Ed. 1154 (1918). A party alleging an equal protection claim with their classification being a "class of one" must prove that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000). When determining if borrow pit operators are "similarly situated" to one another, the Court must consider a "full variety of factors that an objectively reasonable … decisionmaker would have found relevant in making the challenged decision." Lindquist v. City of Pasadena Texas, 669 F.3d 225, 234 (5th Cir. 2012) (quoting Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1203 (11th Cir. 2007)). The degree to which other parties are similarly situated to the party in

8

question will depend "substantially on the facts and context of the case." Lindquist, 669 F.3d at 234 (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir.2004)). After reviewing the record, we find that the Meyers failed to provide any substantial or relevant factors to show how their borrow pit is similarly situated to other borrow pits.

Before the close of trial, the Meyers submitted other borrow pit permit applications into evidence. The applications submitted by the Meyers had a wide array of application dates and borrow pit sizes, with some applications being submitted before the new 2012 Ordinance while others were submitted after. The Stella and Scarsdale pits, frequently mentioned by the Meyers in comparison to their own, had borrow pit applications that predated the 2012 Ordinance. By only submitting the applications into evidence, the Meyers did not establish how the borrow pit applications, dated before or after the new 2012 ordinance, were similarly situated or treated differently from their own. As such, the Meyers failed to satisfy the first element of being a "class of one" to show that their equal protection rights were violated.

**Due Process**

The Meyers contend that their procedural and substantive due process rights were violated when Ragas rejected their initial borrow pit application and they were not granted the implementation of a "water feature" as a backfill exception. "Under the Fourteenth Amendment to the United States Constitution and La. Const. Art. I, § 2 of the Louisiana Constitution of 1974, a person is protected against deprivation of his life, liberty, and property without due process of law." Fields v. State Through Dep't of Pub. Safety & Corr., 98-0611 (La. 7/8/98), 714

9

So. 2d 1244, 1250. To establish a claim of a violation of procedural due process, the claimant must show that it was deprived of a property or liberty right and it was not provided with notice and an opportunity to be heard. State v. Golston, 2010-2804 (La. 7/1/11), 67 So. 3d 452, 463. To establish a claim of a violation of substantive due process, the claimant must show that its constitutional guaranty of life, liberty, or property was arbitrarily or capriciously deprived. Boudreaux v. Larpenter, 2011-0410 (La. App. 1 Cir. 6/1/12), 110 So. 3d 159, 170. After reviewing the record, we find that the Meyers failed to show that their procedural or substantive due process rights were violated.

The Meyers argued that, as a result of the rejection of their initial borrow pit application, they were deprived a valuable property right without due process of law. In particular, they were denied the right to sell almost 60% of usable clay that was left on their property because Ragas rejected their first borrow pit application. Meyers asserted that Ragas did not have the authority to reject their application and that she should have accepted the initial application despite being on the improper form. Essentially, they claim their procedural due process rights were violated when Ragas, despite not having the authority, rejected their initial borrow pit application. When Meyers resubmitted the application on the new form on October 28, 2014, they were granted a smaller pit operation of less than 10 acres with no backfill requirement. Meyers contends that being denied an exception to backfill, despite other borrow pit operations being granted one, was a violation of their substantive due process rights.

First, Meyers fails to meet the standard to prove a procedural due process violation because the rejection of the borrow pit application on the old form is not

a deprivation of a property right. It was within PPG's authority and police power to enact the 2012 Ordinance. It is also reasonable that a new form, representing the changes made from the 2012 Ordinance, would be used when applying for new borrow pit applications. Complying with the new form instead of the old form does not deny the applicant a property or liberty right, but instead provides an update on what may be required to gain a borrow pit permit. Ragas denying the old form is within PPG's authority to enact the 2012 Ordinance, thus it does not violate the Meyers' procedural due process rights.

The Meyers cannot present a legitimate claim of a violation of substantive due process because they did not submit their second borrow pit application into evidence. The Meyers cannot show that their property right was arbitrarily or capriciously denied because the court does not know if the second borrow pit application contained a request for an exception to backfill if the borrow pit in question exceeded 10 acres. The evidence reflects that the Meyers reapplied for a smaller pit, between 4-7 acres, which would not require them to backfill. The Meyers substantive due process rights were not violated because PPG did not prevent them from requesting a pit of 10 or more acres with exceptions to backfill on the new form.

**Inverse Condemnation**

The Meyers allege that they are entitled to compensation by inverse condemnation because PPG prevented them from excavating 324,000 cubic yards of clay with the denial of their first permit application on October 3, 2014. The purpose of an inverse condemnation claim is to provide a procedural remedy for an owner who seeks compensation for a taking that has happened to their land by a

government or private entity. Faulk v. Union Pac. R.R. Co., 2014-1598 (La. 6/30/15), 172 So. 3d 1034, 1043–44. Under the constitution, a taking is "any substantial interference with the free use and enjoyment of property." State Through Dep't of Transp. & Dev. v. Chambers Inv. Co., Inc., 595 So. 2d 598, 602 (La. 1992). To establish an inverse condemnation claim, the Meyers must show the following: (1) whether a recognized species of property right has been affected; (2) whether the property has been taken or damaged in violation of a citizen's constitutionally protected rights; and (3) whether the taking or damaging has been for a public purpose under La. Const. Art. 1, § 4." Sewell v. Sewerage & Water Bd. of New Orleans, 2020-0381 (La. App. 4 Cir. 2/24/21), 365 So. 3d 583, 589. After reviewing the record, we found that the Meyers failed to meet the burden to establish their inverse condemnation claim.

The first element the Meyers must prove for their inverse condemnation claim is to establish a recognized property right being affected by PPG and their 2012 Ordinance. Under La. Const. Art. 1, § 4(A), "[e]very person has the right to acquire, own, control, use, enjoy, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power." The determination of whether the ordinance is a constitutionally valid exercise of police power depends on whether the regulation enacted was reasonable and accomplished its purpose under the scope of the police power. Boudreaux, 110 So. 3d at 168. If the ordinance affecting private property is so onerous that its effect is tantamount to a direct appropriation, then compensation may be required for the owner of the property. Faulk, 172 So. 3d at 1056.

12

The second element the Meyers must prove is that the property was taken or damaged in violation of their constitutionally protected right. An unconstitutional taking does not arise merely because the owner is unable to maximize the economic potential of their property. State, Dep't of Soc. Servs. v. City of New Orleans, 95-1757 (La. App. 4 Cir. 5/29/96), 676 So. 2d 149, 154. Denying one avenue of developing your property would not necessarily amount to a taking either. Major v. Pointe Coupee Par. Police Jury, 2007-0666 (La. App. 1 Cir. 12/21/07), 978 So. 2d 952, 957. In order for a taking to arise in this situation, the taking must require the owner to suffer a permanent invasion of its property and deprive the owner of all economically beneficial use of its property. Faulk, 172 So. 3d at 1057.

The Meyers argue that PPG enacting the 2012 Ordinance prevented them from excavating the 324,000 cubic yards of clay on their property. The 2012 Ordinance contained additional backfilling restrictions when excavating a borrow pit 10 acres or larger. The Meyers contend that this restriction, which was not enforced on other borrow pit operators, unfairly restricted the economic potential of their property. Kendall Meyers testified that other borrow pit operators were able to have their pits qualify as a "water feature" in order to avoid the backfill requirement. Because the other borrow pit operators were granted this exception and were able to maximize the economic potential of their property, they should be granted the same exception. However, the Meyers failed to show that the 2012 Ordinance was so onerous that it affected their property right to the degree that it would be considered an unconstitutional taking. The 2012 Ordinance itself is valid under the police power of PPG and its goal to protect the environment along with

other properties that would neighbor these borrow pits. Kendall Meyers testified that the property had been used for other economically beneficial purposes such as being rented out as a farm. Furthermore, the Meyers were still able to make a profit by excavating some of the clay from their property after submitting their second borrow pit application. As stated in <u>Faulk</u>, the Meyers would need to be deprived of all economically beneficial use of the property, for a taking to arise. 172 So. 3d at 1057. The Meyers not only had other avenues of economic use for his property, but they also gained economic benefit from their approved borrow pit permit. As such, the Meyers failed to show that an unconstitutional taking took place. Therefore, we find the district court properly denied their inverse condemnation claim.[6]

## DECREE

For the foregoing reasons, we affirm the District Court's September 27, 2022 judgment dismissing the Meyers' due process violation, equal protection violation, coercion and inverse condemnation claims.

**AFFIRMED**

---

[6] It should be noted that Meyers failed to address the third element needed for their inverse condemnation claim.